Alicia LARSON, Plaintiff and Appellant,

v.

Marc LARSON, Defendant and Appellee.

No. 930550–CA.

Court of Appeals of Utah.

Dec. 30, 1994.

720

John D. Sheaffer, Jr., Salt Lake City, for appellant.

Ellen Maycock, Salt Lake City, for appellee.

Kathryn D. Kendell, Salt Lake City, for amicus curiae American Civil Liberties Union.

Before BILLINGS, ORME and WILKINS, JJ.

## OPINION

ORME, Associate Presiding Judge:

Alicia Larson appeals the trial court's order modifying the child custody and visitation provisions of a divorce decree. She also challenges the trial court's decision not to award her costs and attorney fees incurred in contesting the modification of the divorce decree initiated by her ex-husband. We reverse the trial court's ruling modifying the divorce decree, but affirm its decision not to award costs and attorney fees.

## FACTS

After nine years of marriage, Alicia and Marc Larson were divorced on April 29, 1992. The marriage produced three children, the oldest of whom was eight and the youngest of whom was five at the time the court modified the divorce decree. Prior to her marriage, Alicia supported herself as a stained-glass artist. During the marriage and at the time of the divorce, Alicia was a homemaker, not otherwise employed outside the home, and Marc owned and operated a physical therapy clinic in Park City, Utah.

The decree of divorce incorporated the parties' stipulation and property settlement agreement and provided, in part, that Marc and Alicia maintain joint legal custody of the children, with physical custody to be with Alicia. Marc was awarded extensive rights of visitation, including two-and-one-half weekends per month, extended summer visits, and an equal share of time with the children during the holidays.

The parties were ordered to cooperate in fostering and maintaining each other's relationship with their children and to inform one another of important issues in the children's lives to facilitate joint decision-making. Consistent with this general mandate was the specific requirement that each party was to give the other a minimum of thirty days written notice prior to relocating from the Park City area.

The parties and their children have lived in Park City since 1989. Alicia and the children continued to reside together in Park City following the divorce, as did Marc in a separate home. In the summer of 1992, Alicia attended a workshop in Oregon to receive instruction in glass fusion, an advanced form of stained-glass art. During this workshop, Alicia met Doug Pomeroy, a glass fusion artist and an instructor at the workshop. Subsequently, Alicia and Doug made plans to marry and thereafter live together with the Larson children in Doug's home in Corvallis, Oregon. In October 1992, Alicia notified Marc, by letter, that she intended to marry Doug Pomeroy and move to Corvallis with the children.

On November 6, 1992, Marc filed a petition to modify the custody provisions of the divorce decree. Marc filed the petition because he was concerned that the move to Oregon would not be in the children's best interest, as it would inhibit his ability to maintain a parental relationship with his children, disrupt their religious training, and remove them from their friends and relatives. After an evidentiary hearing, the trial court granted Marc's petition to modify the divorce decree. The court found that it was in the best interests of the children to remain in the Park City area and ordered that if Alicia moved from Summit County, Utah, physical custody of the children would there-

upon be transferred to Marc, and Alicia would then have reasonable and liberal rights of visitation. The trial court also determined that the parties had the ability to pay their own costs and attorney fees.

Alicia Larson appeals, raising the following issues: (1) Was there sufficient evidence to support the trial court's findings? (2) Did the trial court abuse its discretion in granting Marc's petition to modify? (3) Did the trial court abuse its discretion in failing to award costs and attorney fees to Alicia? Alicia also seeks attorney fees on appeal.

## DECISION TO MODIFY

■ ■ We will uphold a trial court's decision to modify a divorce decree if it is within the range of sound discretion.[1] *See Crouse v. Crouse*, 817 P.2d 836, 838 (Utah App.1991). The trial court determined that the children should be removed from the custody of their mother and placed in their father's custody if—but only if—Alicia were to move beyond the boundaries of Summit County, Utah.[2] The focus of the trial court's analysis and decision, then, was not on the parties' respective parenting skills.[3] Instead, the court's order can only be taken to mean that the trial court believed that the children's domicile in Summit County is so essential to their well-being that removal from that community would be more detrimental to them than separating them from their custodial parent—the person who has been primarily responsible for their day-to-day care for the entirety of their lives. While such a conclusion is not inherently impossible, a factor of considerable importance in determining the best interest of children is the maintenance of continuity in their lives, and removing children from their existing custodial place-

---

1. A threshold requirement for modifying a divorce decree is a material " 'change of circumstances occurring since the entry of the decree and not contemplated in the decree itself.' " *Porco v. Porco*, 752 P.2d 365, 367 (Utah App. 1988) (quoting *Naylor v. Naylor*, 700 P.2d 707, 710 (Utah 1985)). *See also* Utah Code Ann. § 30-3-10.4(1)(a) (Supp.1994); *Shioji v. Shioji*, 712 P.2d 197, 200 (Utah 1985); *Muir v. Muir*, 841 P.2d 736, 739 (Utah App.1992). The parties are in agreement here that a material change of circumstances occurred so as to enable the court to reach the merits of Marc's petition.

2. Regardless of whether the court's decision to modify was erroneous, the scope of its order is problematic. The court's obligation is to evaluate whether a particular change in circumstances justifies upsetting the status quo in order to achieve what is in the best interests of the children. Without question it was within the court's authority to determine the county within which the children would reside. *See* Utah Code Ann. § 30-3-10.3(2)(a) (Supp.1994). However, such a determination necessitates a case by case evaluation and cannot be set permanently in stone. In the instant case, the trial court balanced the advantages and disadvantages of Park City, Utah, against the advantages and disadvantages of Corvallis, Oregon. However, the court's order is a blanket restriction, preventing Alicia from retaining custody if she *ever* moves from Summit County. Such an order is too broadly tailored in any event and ignores the possibility that some other move outside of Summit County may be in the best interests of the children. For example, the order as drawn would restrict Alicia from moving with the children to Denver even if Marc had moved there first. It would permit her to move with the children to Coalville or Kamas, but not Heber City or Salt Lake City, even though all are within half an hour's drive of Park City.

In a similar vein, we note that Marc has moved to dismiss this appeal, arguing that the matter is moot because Alicia's fiance no longer lives in Corvallis, Oregon. Alicia opposed this motion, claiming that she still intends to relocate to "an area of the Northwest near Corvallis" and thus the issues before the court have not materially changed. However, a move to an area other than Corvallis—a college community with relatively easy freeway access to airports in Portland and Eugene—may present a different set of factors affecting the best interests of the children. We have recently noted our trepidation about the applicability of res judicata to "child custody and related proceedings ... where the welfare of children is at stake." *In re J.J.T.*, 877 P.2d 161, 163 (Utah App.1994). *See id.* at 163–64.

While in a narrow sense this appeal may be moot as Alicia no longer appears to desire to move to Corvallis, in a broader sense the issue is not moot as our decision will still affect the rights of the litigants and assist the parties and the trial court should a similar question arise. Moreover, this case is ripe for review because the issues in this appeal, particularly with respect to religion and relocation, are "of wide concern, affect[] the public interest, [and are] likely to recur in a similar manner." *In re J.P.*, 648 P.2d 1364, 1371 (Utah 1982) (quoting *Wickham v. Fisher*, 629 P.2d 896, 899 (Utah 1981)).

3. It is undisputed that both Alicia and Marc are exemplary parents, each deeply committed to the well-being of their children.

ment undercuts that policy.[4] *See, e.g., Hirsch v. Hirsch,* 725 P.2d 1320, 1323 (Utah 1986) (Zimmerman, J., concurring); *Hutchison v. Hutchison,* 649 P.2d 38, 41 (Utah 1982); *Nielsen v. Nielsen,* 620 P.2d 511, 512 (Utah 1980); *In re Cooper,* 17 Utah 2d 296, 298–99, 410 P.2d 475, 476 (1966); *In re Application of Conde,* 10 Utah 2d 25, 29, 347 P.2d 859, 861 (1959); *Rosendahl v. Rosendahl,* 876 P.2d 870, 873 (Utah App.), *cert. denied,* 883 P.2d 1359 (Utah 1994); *Cummings v. Cummings,* 821 P.2d 472, 478–79 (Utah App.1991); *Moon v. Moon,* 790 P.2d 52, 54 (Utah App.1990). Therefore, unless there were compelling evidence that residing in Summit County, Utah, would be better for the children than allowing them to continue to reside with their life-long primary caregiver, we would conclude that the trial court exceeded the exercise of sound discretion in entering the order before us.

## SUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS

■ In reviewing the trial court's decision, we focus on its findings of fact. "We will not disturb such findings unless they are clearly erroneous." *Crouse v. Crouse,* 817 P.2d 836, 838 (Utah App.1991). *See* Utah R.Civ.P. 52(a). Alicia Larson, as the appellant, has the burden of marshalling the evidence in support of the challenged findings, and then of demonstrating that those findings are so void of support as to be clearly erroneous. *Hagan v. Hagan,* 810 P.2d 478, 481 (Utah App.1991). *See West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1313 (Utah App. 1991). Alicia has met her initial burden by adequately marshalling the evidence supporting the factual findings in question, which she then challenges as being clearly erroneous.

■ Although Alicia assails seven of the findings made by the court, we need only focus on those findings which bear on its conclusion that the children's living with their father in Park City is preferable to the children's living with their mother in Corvallis.[5] In this regard, the court found, with our emphasis, that

> [d]uring the marriage, both parents and the children attended the LDS Church and were active in the LDS Church. Since the separation of the parties, plaintiff has ceased to be active in the LDS Church.. Defendant remains active and wishes to keep the children active in the LDS Church. *The court finds that it is unlikely that, if the children were to move to*

4. To an extent, of course, uprooting children from their present schools and neighborhood and moving them to a different state is inimical to continuity in their lives. Thus, the trial court's real preference, namely that Alicia remain in Park City and that the children remain in her custody, would have maximized continuity in the children's lives. Indeed, given Alicia's testimony that she would not move if it meant losing custody of her children, it appears the court's order really sought to secure the status quo rather than effect a change of custody. In any event, especially in the case of younger children, the disruption of moving with their life-long primary caregiver would usually be less detrimental than a sudden change in who is serving that important role. Such disruption might be exacerbated in this case by the fact that Marc's long work hours would necessitate the use of surrogate care, which has not been present in the children's lives heretofore, although Marc testified that he would cut back on his work hours if he had custody of the children.

By contrast, divesting a parent of custody if she moves may be appropriate where older children are so intertwined with a community and less dependant on a particular caregiver that

removing them from their community would be more detrimental than disrupting the existing custody arrangement. However, as will be seen, there is little in the findings or record to suggest that these children are so closely tied to the community in which they now live that removing them from their existing custodial placement would be preferable to their moving from that community.

5. Thus, we need not concern ourselves with the trial court's finding that "[n]othing about the move to Corvallis, Oregon would enhance the children's educational environment, nor plaintiff's career potential." In order to affirm the trial court's decision altering the existing placement of these children if their mother moves from Summit County, there must be a sufficient showing that there is something about *Summit County* that is important enough in these children's lives to justify removing them from the care of their custodial parent rather than permit them to leave the county with her. An essentially neutral finding that a move to Corvallis would not *enhance* either the children's educational environment or their mother's career tells us nothing about how living in Summit County is uniquely beneficial to the children's welfare.

*Corvallis, Oregon, plaintiff would continue their religious training.*

Alicia's "religious compatibility" with her children is an appropriate factor for the court to consider. The Utah Supreme Court has previously decided that a parent's "religious compatibility" with his or her children is one factor that a court may consider in determining the children's best interest. *Hutchison v. Hutchison,* 649 P.2d 38, 41 (Utah 1982). To date, neither Utah appellate court has had occasion to define what is meant by "religious compatibility."

We believe the compatibility of a parent's and child's religious *beliefs* is not a matter that the court should consider,[6] absent some showing that religious beliefs are translated into actions that are harmful to a child's welfare. *See Zummo v. Zummo,* 394 Pa.Super. 30, 574 A.2d 1130, 1152 (1990) (holding parents' relative religious devoutness cannot be considered in custody decisions).

Instead, religious compatibility is only a factor when there has been a showing that specific religious beliefs or practices are contrary to the child's general welfare. *See, e.g., In re Marriage of Short,* 698 P.2d 1310, 1313 (Colo.1985) (proper to consider religious beliefs and practices that are "reasonably likely to cause present or future harm to the physical or mental development of the child"); *Osteraas v. Osteraas,* 124 Idaho 350, 355, 859 P.2d 948, 953 (1993) (religiousness of parent not a factor in custody decision absent compelling reason otherwise); *Compton v. Gilmore,* 98 Idaho 190, 192, 560 P.2d 861, 863 (1977) (considering parents' conflicting religious beliefs improper absent "clear and affirmative showing that the conflicting religious beliefs affect the general welfare of the child").

In the instant case, if there were a showing that Alicia's actions would have inhibited or stopped the children from continuing in the religious traditions to which they were accustomed, such actions could disrupt the stability and continuity of the children's lives and thus have some bearing on the trial court's decision. *See Morris v. Morris,* 271 Pa.Super. 19, 412 A.2d 139, 142 & n. 1 (1979). *But see Felton v. Felton,* 383 Mass. 232, 418 N.E.2d 606, 607–08 (1981) (observing that diversity of religious experience can be beneficial to child's welfare). However, the record in the instant case does not support the emphasized portion of the trial court's finding. Neither Alicia's actions in the past, nor the testimony concerning her probable conduct in the future, indicate any likelihood that she will not continue to foster her children's religious upbringing.

Alicia faithfully took the children to church every Sunday when they were not already with Marc so that they could attend the services with him, and she picked them up at the conclusion of the services. She testified that the reason she did not personally attend was because the presence of her ex-husband at the services made her uncomfortable. However, she was able to overcome whatever level of discomfort the presence of her ex-husband caused her and attend the significant religious events associated with her children's religious training.

■ Moreover, she testified that she believed it was very important for the children to continue in their life-long religious tradition. She stated that she would attend church services with her children in Corvallis, believing it unacceptable to drop off and pick up unescorted young children at a new church. It was uncontroverted that she had investigated the LDS churches in the Corvallis area and planned to support the children in their religious activities.[7] Because no evidence of record supports the trial court's

---

6. The trial court initially recognized this principle when it stated during the evidentiary hearing: "This case is not going to turn on religion. I just wanted to focus on that if that was an issue for the children. And we have gone into that farther than the court of law justifies."

7. The trial court intimated that it doubted the credibility of Alicia's testimony in this respect. This is the trial court's prerogative. *See Mos-*

*trong v. Jackson,* 866 P.2d 573, 579 (Utah App. 1993), *cert. denied,* 878 P.2d 1154 (Utah 1994). Nonetheless, even wholly ignoring Alicia's testimony, there is simply no evidence that supports the court's finding that "it is unlikely that, if the children were to move to Corvallis, Oregon, plaintiff would continue their religious training." This portion of the court's finding appears to be speculative.

finding that appellant would not continue her children's religious training, the finding is clearly erroneous, and we reject it.

 The trial court also found that "[t]he children do not wish to move to Corvallis, Oregon." A review of the testimony and of the only child custody evaluation which was performed indicates that there is some evidence to suggest that the children were feeling conflict about the matter. However, the primary source of the children's conflict appears to have been the custody dispute between their parents and not the impending move to Oregon. For example, each child recognized that their father opposed the move to Oregon because it would place a great distance between them. Given their father's views about the impending move, it is not surprising that each child reported some trepidation concerning the move. Nonetheless, when specifically questioned about moving to Oregon to live with their mother and her fiance, each child reported feeling "good" or "happy." At most, the evidence indicates the children were ambivalent about moving to Oregon, which was the evaluator's assessment of their perspective. Therefore, we disregard, as clearly erroneous, the court's finding that the children did not wish to move to Oregon.[8]

## BEST INTERESTS OF THE CHILDREN

The trial court concluded that "[a] move to Corvallis, Oregon is not in the children's best interest; it is in the best interest of the children to remain in Summit County, Utah." Having set the aforementioned findings aside as erroneous, we now evaluate whether the remaining findings support the trial court's decision that the children would be better off living with their father in Summit County, Utah, than moving to Corvallis, Oregon, with their mother.[9]

The primary focus of Marc's argument below was not that Alicia's parenting skills had deteriorated subsequent to his stipulating that she should have physical custody of the children, or even that unique opportunities for the children in Summit County required that they remain there. His concern was that if the children moved to Oregon, the distance between them would detrimentally affect his ability to maintain and foster the mutually beneficial relationships he now has with his children.

It is not disputed that Marc is a positive factor in his children's lives. However, the evidence does not suggest, nor did the court explicitly find, that if the children were to move to Oregon with their mother, Marc would cease to be an important influence in the children's lives. It is undisputed that, since the divorce, Alicia has encouraged Marc's involvement and been extremely flexible in coordinating his visitation.

Moreover, the clinical social worker who conducted the only child custody evaluation performed in this case testified that it was unclear, at best, what effect the move to Oregon, and the new visitation schedule that would necessarily ensue, would have on the children's relationship with their father. The evaluator stated that sharing longer blocks of time together, as opposed to the more frequent visitation (but for shorter periods) under the current arrangement, could facilitate better communication between Marc and his children and thereby actually enhance what is already a very healthy relationship.

 Thus, the only remaining finding supporting the trial court's decision to automatically transfer custody if Alicia moves anywhere outside the boundaries of Summit County is that

[t]he majority of the children's extended family, including aunts, uncles, and cous-

8. We note that a child's preference concerning custody decisions is not binding on the court and must be weighed according to the age and the maturity of the child expressing the preference. *See* Utah Code Ann. § 30-3-10(1) (Supp.1994). *See also Cummings v. Cummings,* 821 P.2d 472, 479 (Utah App.1991) (noting "particular care" is required when factoring young child's preference into custody decision).

9. There is no need to remand for additional findings because, as hereafter explained, the thrust of Marc's argument below was not that the children are so tied to the community that removing them from Summit County, Utah, would be contrary to their best interests. Thus, the evidence of record would not support the entry of additional findings along those lines.

ins, are primarily in the state of Utah. Defendant's children from his prior marriage, half-sister and half-brother to these children, also live in Utah. These children have ... excellent relationships with their older half-sister and half-brother. They have many friends and connections in Utah.

■ While the close proximity of the children's friends and extended family is an appropriate factor for the court to consider, this, by itself, is insufficient to disturb a previously determined custody arrangement in which the children are happy and well-adjusted. Moreover, the children's relatives who live in Utah reside not in Summit County, but in Orem and Salt Lake City, and are members of Marc's extended family. The association the children enjoy with these relatives is an adjunct of their visitation with Marc. Although the timing and frequency of the children's visitation with Marc would change if Alicia and the children were to move to Oregon, the overall volume of visitation apparently would remain fairly constant. Since Marc's extended family does not live in Summit County and the children would continue to visit these relatives during Marc's visitation periods, the court's finding is an insufficient basis on which to conclude that living in Summit County, Utah, is so important to the children's well-being that their existing custody arrangement must be altered rather than permit their custodial parent to move the children to Corvallis, Oregon.

## ATTORNEY FEES AT TRIAL

■ Appellant contends that the trial court abused its discretion by denying her request for an award of costs and attorney fees. The decision to award costs and attorney fees in divorce and modification proceedings lies within the sound discretion of the trial court. *See* Utah Code Ann. § 30–3–3 (1989 & Supp.1994); *Munns v. Munns,* 790 P.2d 116, 123 (Utah App.1990). However, to recover costs and attorney fees in proceedings on a petition to modify a divorce decree, the requesting party must demonstrate his or her need for attorney fees, the ability of the other spouse to pay, and the reasonableness of the fees. *Morgan v. Morgan,* 854 P.2d 559, 568 (Utah App.), *cert. denied,* 860 P.2d 943 (Utah 1993).

In the present case, the trial court refused to award costs and attorney fees because it found that Alicia failed to show a need for assistance with payment of her litigation expenses. Alicia argues the court should have awarded her costs and attorney fees because the record indicates she is in need of financial assistance, having no income other than alimony and child support, while Marc has a steady income of approximately $150,000 per year. On the other hand, Marc points out that Alicia receives $2400 per month for child support and $3000 per month in alimony, and will be receiving $108,000 in a final lump sum property settlement when alimony terminates in 1997.[10]

■ The trial court did not abuse its discretion in denying Alicia costs and attorney fees. The record supports the trial court's finding that both parties were financially able to bear their own costs and attorney fees. Alicia receives income by way of alimony in the amount of $3000 per month, and has a secured distribution of approximately $108,000 due to be paid to her on April 1, 1997.[11] The costs and attorney fees

10. The $108,000 figure is derived from the divorce decree, which provides, in part, as follows:

> Plaintiff is awarded judgment in her favor and against defendant in the principal sum of $86,500 to earn interest at the rate of 4% per annum from April 1, 1992, until April 1, 1997, at which time this judgment shall be due and payable to plaintiff and shall earn interest at the rate of 12% per annum until fully paid and satisfied. This property settlement award and judgment shall be appropriately secured by defendant's Summit Sports Medicine assets, accounts, accounts receivable, equipment and

> vehicle, and the security interest shall be appropriately perfected. This security interest is subordinate to any necessary extension of credit to defendant and Summit Sports Medicine for business purposes.

11. We do not consider the $2400 Alicia receives in child support as income that is appropriately considered for purposes of determining her financial ability to pay attorney fees. Money paid for child support is earmarked to meet the children's expenses and is not available to pay the expenses of custody litigation between their parents.

in question total $5,077.40. Appellant's income, combined with her ability to borrow, if need be, against her perfected security interest in the assets of Marc's business, is sufficient support for the trial court's decision not to award costs and attorney fees. Accordingly, we affirm the trial court's decision denying Alicia's claim for costs and attorney fees incurred in contesting the modification of the divorce decree.

## ATTORNEY FEES ON APPEAL

Appellant also argues that she is entitled to an award of attorney fees incurred in pursuing this appeal. Generally, when a trial court awards fees in a divorce action to a party who then prevails on appeal, that party will also be entitled to fees on appeal. *Crouse v. Crouse*, 817 P.2d 836, 840 (Utah App.1991). However, in the present case, the trial court did not award attorney fees to either party in the action below. Therefore, regardless of which party prevails on appeal, and absent any showing that the parties' financial situation has changed subsequent to the time of the trial court's decision, both parties must bear their own fees on appeal. *Cf. Riche v. Riche*, 784 P.2d 465, 470–71 (Utah App.1989) (remanding to trial court for determination of whether financial circumstances of party who was denied attorney fees incurred at trial had changed such that an award of fees incurred on appeal was appropriate).

## CONCLUSION

The trial court erred in modifying the custody portion of the original divorce decree because the evidence was insufficient to support the court's conclusion that it was in the children's best interest to upset the existing custody arrangement if their custodian and life-long primary caregiver ever left Summit County, Utah. Accordingly, we reverse the trial court's modification ruling. However, the trial court correctly found that Alicia Larson had the financial ability to pay her own costs and attorney fees and therefore did not err in denying her request for an award of costs and attorney fees. Finally, we conclude that each party should bear their own attorney fees incurred on appeal.

BILLINGS and WILKINS, JJ., concur.