2001 UT App 318

J. Lynn WILDE, Petitioner and Appellee,

v.

Sherrie D. WILDE, Respondent and Appellant.

No. 20000473–CA.

Court of Appeals of Utah.

Oct. 25, 2001.

Douglas G. Mortensen, Matheson Mortensen Olsen Jeppson PC, Salt Lake City, for Appellant.

Nicolaas Dejonge and Diana J. Huntsman, Diana J. Huntsman & Associates, PC, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., and BILLINGS and ORME, JJ.

## OPINION

BILLINGS, Judge:

¶ 1 This is Appellant Sherrie D. Wilde's second appeal concerning an alimony modification petition she filed in 1994. In particular, she appeals the trial court's refusal to award her modified alimony retroactive to the date of her modification petition and the trial court's refusal to award her prejudgment interest. She also challenges the trial court's finding that she has the ability to contribute to her support. Finally, she appeals the trial court's denial of her attorney fees and costs incurred at trial. We affirm.

## BACKGROUND

¶ 2 In 1987, after twenty-five years of marriage, Appellant and Appellee J. Lynn Wilde divorced. In the divorce decree, Appellant was awarded alimony of $200 a month for seven years. In 1992, in an amended divorce decree, the parties stipulated to increase the alimony to $318 a month.

¶ 3 In August of 1994, Appellant filed a petition to modify the amended decree, seeking an increase in the amount and duration of the alimony. The petition alleged a substantial and material change in circumstances based on a substantial increase in Appellee's income, a substantial decrease in Appellant's income, and Appellant's contraction of rheumatoid arthritis. Appellee was served with the petition in September of 1994.

¶ 4 In January of 1995, Appellant lost her job for reasons unrelated to her health. In February, she filed a motion for temporary alimony. She was awarded $800 a month, effective March 1, 1995. Sometime in April of 1995, Appellant obtained part-time employment. In March of 1996, Appellant terminated her employment. Since terminating her employment, she has not made efforts to gain employment.

¶ 5 In November of 1995, Appellant filed an amended modification petition restating her request for increased alimony and accusing Appellee of orchestrating the parties' divorce to deprive Appellant of her fair share of the marital estate (the fraud claim). Appellant then proceeded to conduct discovery of Appellee's assets, requesting financial records from Beneficial International, Inc., of which Appellee is a principal, from "the beginning" of the corporation, and related entities, from 1985.

¶ 6 In March of 1997, during the first trial on the amended modification petition, and in response to Appellee's motion in limine, the trial court barred further inquiry into Appellant's fraud claim. Following the trial, the court concluded that Appellant's arthritis was a substantial, material change in circumstances justifying modification of the alimony award. However, the trial court also concluded that Appellant's arthritis was not an extenuating circumstance required to support a modification by an amendment to Utah's Divorce Statute (extenuating circumstance amendment), which became effective during the proceedings. Therefore, the trial court denied Appellant's modification petition and ordered that alimony terminate.

¶ 7 Appellant appealed to this court. We reversed in part, holding the extenuating circumstance amendment did not apply, and remanded for the trial court:
(1) to determine the amount and duration of additional alimony to be awarded to [Appellant]; (2) to determine the amount of attorney fees reasonably incurred on appeal by [Appellant]; and (3) to reconsider whether or not [Appellant] should be awarded attorney fees incurred at trial on

the petition to modify, and if so, the amount thereof, all supported by the required findings of fact.

*Wilde v. Wilde,* 969 P.2d 438, 445 (Utah Ct.App.1998).[1]

¶ 8 Following our remand, Appellant filed a petition for temporary alimony, alleging that she had become totally disabled and unemployable. She was awarded temporary alimony of $2,000 a month from March of 1999.

¶ 9 A second trial was held on four separate days between August 9 and October 13, 1999. At trial, Appellant sought modified alimony retroactive to the date of her modification petition. To support her claims that she was unable to work to meet her living expenses of $3,200 a month, Appellant offered evidence that the Social Security Administration (SSA) had awarded her disability benefits, effective March 1, 1996. She also offered testimony by two new medical experts, in addition to two experts who testified at the first trial. The experts testified Appellant's arthritis had worsened and she had developed Parkinson's Disease, Shogren's Syndrome, and Fibromyalgia since the first trial. In regard to Appellant's employability, Appellee offered videos showing Appellant performing "normal day-to-day activities" and testimony of a temporary staffing agency sales president and two individuals who had been awarded disability benefits by the SSA but were employed.

¶ 10 Following the second trial, the court found Appellant had the ability to work part-time and contribute to her support and was voluntarily unemployed. The court additionally found Appellee's earnings had increased since the divorce and he had the ability to pay reasonable alimony. The court therefore awarded Appellant alimony of $1,500 a month, effective November 1, 1999. The court denied Appellant retroactive modified alimony, finding she had received temporary alimony, disability benefits, Medicaid, and support from her friends and her church during the proceedings. Although the trial court awarded Appellant all of the attorney fees and costs she requested for the first

appeal, the trial court denied all of the attorney fees and costs she requested for the two trials.

¶ 11 Following the trial court's ruling, Appellant filed a Motion to Alter or Amend Judgment, for Relief from Judgment, and/or for a New Trial (motion for a new trial). The trial court denied the motion. In June of 2001, Appellant filed this second appeal.

## ANALYSIS

### I. Retroactive Alimony

¶ 12 Appellant argues an amendment to Utah Code Ann. § 30–3–10.6(2), effective May 1, 2001, following the second trial, requires an alimony modification to be applied retroactively to the date the modification pleading is served. She further argues amended section 30–3–10.6(2) should apply in this case because it clarifies, rather than substantively changes, the statute in effect when Appellee was served. She alternatively argues even if the trial court had discretion, under section 30–3–10.6(2) or the common law, it exceeded that discretion in not awarding her modified alimony retroactive to the date her petition was served.

### A. Does the Amendment to Section 30–3–10.6(2) Apply?

¶ 13 As a general rule, amendments which " 'affect substantive or vested rights ... operate only prospectively.' " *Wilde v. Wilde,* 969 P.2d 438, 442 (Utah Ct.App.1998) (quoting *Department of Soc. Servs. v. Higgs,* 656 P.2d 998, 1000 (Utah 1982)). However, if an amendment is procedural or remedial, then it applies to accrued, pending, and future actions. *See id.* When the Legislature amends a statute, we presume it intended to make a substantive, rather than procedural or remedial change. *See id.*

¶ 14 "A substantive law 'creates, defines and regulates the rights and duties of the parties which may give rise to a cause of action.' " *Wilde,* 969 P.2d at 442 (concluding amendment which conditioned modification of alimony on showing of "extenuating circum-

---

**1.** This remand is quite limited and does not seem to require a new trial. However, neither party objected to the scope of the proceedings that followed.

stances" regulated right to receive alimony and substantively changed law) (citation omitted). A procedural or remedial law "provid[es] a different mode or form of procedure for enforcing substantive rights," *Pilcher v. Department of Soc. Servs.*, 663 P.2d 450, 455 (Utah 1983), or clarifies the meaning of an earlier enactment. *See Foil v. Ballinger*, 601 P.2d 144, 151 (Utah 1979).

¶ 15 Appellant does not appear to argue that the amendment to section 30–3–10.6(2) is procedural; rather, she argues the amendment clarifies how section 30–3–10.6(2) should have been understood. " '[E]very amendment not expressly characterized as a clarification carries the rebuttable presumption that it is intended to change ... existing legal rights and liabilities.' " *Abel v. Industrial Comm'n*, 860 P.2d 367, 369 (Utah Ct. App.1993) (citation omitted). In *Foil*, the Utah Supreme Court held that an amendment to the statute requiring a plaintiff to file a notice of intent to commence a malpractice action was procedural because it clarified the Legislature's intent which had been questioned in prior case law. *See Foil*, 601 P.2d at 151. Appellant asserts there has been "dispute and uncertainty" as to whether prior section 30–3–10.6(2) granted trial courts the discretion to award or required them to award modified alimony retroactively to the date of the modification petition. However, she cites no authority for this proposition. Cases interpreting this section do not mention any dispute or uncertainty. Rather, they suggest that prior section 30–3–10.6(2) unambiguously granted trial courts the discretion to determine if and when support should be awarded retroactive to the petition. *See Ball v. Peterson*, 912 P.2d 1006, 1012 (Utah Ct.App.1996); *Crockett v. Crockett*, 836 P.2d 818, 820 (Utah Ct.App.1992).

¶ 16 As we discuss in section I.B., we conclude the amendment to section 30–3–10.6(2) now requires a court that awards retroactive modified alimony to enter a judgment for the retroactive alimony. That judgment begins to accrue interest and may be filed as a lien to secure that judgment. Under prior section 30–3–10.6(2), a trial court was not required to enter such a judgment. We conclude that this is a substantive change in the law and not a clarification of the prior statute. Thus, amended section 30–3–10.6(2) does not apply in this case.

B. Does the Amendment to Section 30–3–10.6(2) Require that Modified Alimony be Awarded Retroactively?

¶ 17 However, even if the amendment to section 30–3–10.6(2) applies in this case, we conclude that the amendment does not eliminate a trial court's discretion to select the effective date of a modification.

¶ 18 When Appellant served Appellee with her modification petition, section 30–3–10.6(2) provided:

> A child or spousal support payment under a child support order may be modified with respect to any period during which a petition for modification is pending, but only from the date notice of that petition was given to the obligee, if the obligor is the petitioner, or to the obligor, if the obligee is the petitioner.

Utah Code Ann. § 30–3–10.6(2) (1998).

¶ 19 We interpreted that section to give courts the discretion to determine both if and when a modified child support award should be made retroactive.[2] *See Ball*, 912 P.2d at 1012; *Crockett*, 836 P.2d at 820. The only substantive limitation on that discretion was that the modification could run only from the date of notice of the petition. *See id.*

¶ 20 As amended and renumbered, section 30–3–10.6(2) now provides:

> A child or spousal support payment under a child support order may be modified with respect to any period during which a modification is pending, but only from the date of service of the pleading on the obligee, if the obligor is the petitioner, or on the obligor, if the obligee is the petitioner. The tribunal shall order a judgment for the period from the service of the pleading

---

2. We had not explicitly stated that section 30–3–10.6(2) applies to alimony as well as child support modifications. However, we conclude that this section applies to Appellant's alimony modification because Appellant was receiving child support when she filed her modification petition and thus sought to modify a "spousal support payment under a child support order."

until the final order of modification is entered for any difference in the original order and the modified amount.

Utah Code Ann. § 78–45–9.3(4) (Supp.2000).

¶ 21 The amendment retains the sentence this court interpreted in *Ball* and *Crockett*, but adds a sentence requiring a trial court to order a judgment for the period from the service of the pleading until the final order, for any difference between the original award and the modified amount. We conclude the retained sentence still provides that support *may be* modified retroactively with respect to *any* post-service period, not that it must be. Under the amendment, the trial court is only required to order a judgment for *any difference* as opposed to *the difference* during this period. In context, the added sentence merely requires a court to reduce to judgment any award of retroactive support it chooses to make.

¶ 22 Our interpretation is sensible given the delay inherent in the normal judicial process. The parties' circumstances may change, as in the present case, before a hearing on the modification petition can be held; thus, the trial court should be afforded broad discretion. *See Trezevant v. Trezevant,* 403 A.2d 1134, 1138 (D.C.1979).

### C. Did the Trial Court Exceed its Discretion in Refusing to Award Retroactive Alimony?

¶ 23 Under the statutes discussed above and Utah common law, we conclude trial courts have the discretion to award modified alimony retroactively to the date a modification petition is served. The Utah Supreme Court has suggested that courts have the discretion to retroactively award modified alimony for the period during which a modification is pending. *See Marks v. Marks,* 98 Utah 400, 404, 100 P.2d 207, 209 (Utah 1940) (noting "court[s] do[ ] not have the power to ... modify an installment of alimony which has accrued *prior to the making of the application* to modify the decree" (emphasis added)) (citing *Myers v. Myers,* 62 Utah 90, 218 P. 123 (Utah 1923)). This is clearly the

majority rule. *See Hill v. Hill,* 335 N.C. 140, 435 S.E.2d 766, 768 (1993) (" '[A] majority of the courts of other states which have considered the question have held a trial court may make modifications effective as of the date the petition is filed.' " (quoting *Kruse v. Kruse,* 464 N.E.2d 934, 938 (Ind.Ct.App. 1984))); *Trezevant v. Trezevant,* 403 A.2d 1134, 1138 (D.C.1979) ("[T]he few cases addressing this question in other jurisdictions have also concluded that orders increasing support payments may, in the discretion of the trial judge, be retroactive to the date when application for the increase was made." (citing *McArthur v. McArthur,* 106 So.2d 73, 76 (Fla.1958) (citations omitted))); *cf. Shelton v. Shelton,* 885 P.2d 807, 808 (Utah Ct. App.1994) (concluding retroactive award of alimony was within trial court's discretion because obligor deceived court regarding income and other equities were not present).

■ ¶ 24 Appellant argues if the trial court had discretion, it exceeded its discretion in refusing to award her modified alimony retroactively. After Appellant filed her modification petition in August 1994, she received $318 a month in alimony, under the amended divorce decree, through October of 1994. Through January of 1995, when she lost her job for reasons unrelated to her health, she was also working full-time or close to full-time. In February of 1995, Appellant's counsel filed a petition for temporary alimony. She was awarded temporary alimony of $800 a month, from March of 1995, until the trial court terminated alimony at the end of the first trial in March of 1997. Between May of 1995 and March of 1996, she worked up to thirty hours a week. Her August 1995 financial declaration indicates she earned $1,097 a month.

¶ 25 During the twenty-two months following the first trial and while the first appeal was pending, Appellant did not receive any temporary alimony. The trial court found that during this period, Appellant received disability benefits, Medicaid, and assistance from her friends and church.[3] Specifically, after becoming eligible for disability benefits,

---

**3.** Additionally, the trial court found that Appellant's adult son lived with her and gave her $100 per month. However, it is not clear when the

son began paying her. The trial court found that a reasonable value for room and board was $400.

she received $3,374 in April 1997, for disability benefits due from September 1996 through March 1997, and approximately $464 a month, reduced by a Medicare premium, thereafter. Medicaid paid for part of her prescriptions during this period. Additionally, sometime after March of 1997, a friend gave Appellant $11,000 and her church made one of her house payments, some utility payments, and gave her regular food assistance. Her bishop testified that "from ⅛ of 96" her church gave her $29,307. She has no obligation to repay her friends or church.

¶ 26 Following the first appeal, Appellant was awarded temporary alimony of $2,000 a month, from March of 1999. Following the second trial, she was awarded modified alimony of $1,500 a month, effective November 1, 1999.

¶ 27 Appellant argues the trial court should not have "credited" Appellee for the disability benefits, Medicaid, and assistance from her friends and church. We have stated that " 'it is appropriate and necessary for [trial courts] to consider all sources of income' " of the parties in awarding alimony. *Breinholt v. Breinholt*, 905 P.2d 877, 880 (Utah Ct.App.1995) (quoting *Crompton v. Crompton*, 888 P.2d 686, 690 (Utah Ct.App. 1994)). In dicta, the Utah Supreme Court has suggested that it may be appropriate for a trial court to consider "welfare" and unemployment benefits as income of an obligee spouse in determining reasonable alimony in a modification proceeding. *See Montoya v. Montoya*, 696 P.2d 1193, 1195 (Utah 1985). We have also held that disability benefits may be considered income of an obligor spouse in determining alimony. *See Ruhsam v. Ruhsam*, 742 P.2d 123, 125–26 (Utah Ct. App.1987). Thus, we cannot say the trial court exceeded its discretion in considering all of Appellant's sources of income in determining whether to award her retroactive alimony.

¶ 28 Appellant next argues she should be awarded modified alimony retroactively because Appellee consistently delayed the proceedings. This argument was apparently raised in Appellant's motion for a new trial.

In denying that motion, the trial court noted "no evidence of delay by either party was presented at . . . trial" and the court "did not find or reward [the] delay alleged by [Appellant]."

¶ 29 To challenge the trial court's finding of no delay, Appellant "must demonstrate that the finding was clearly erroneous." *See Crockett v. Crockett*, 836 P.2d 818, 820 (Utah Ct.App.1992) (citing Utah R. Civ. P. 52(a)). When challenging a finding, Appellant "must first marshal all [of] the evidence that supports the finding and then demonstrate that despite this evidence the finding is so lacking in support as to be 'against the clear weight of the evidence.' " *Id.* (citation omitted). The marshaling requirement is a prerequisite to our examination of the finding. *See id.* " 'If the appellant fails to marshal the evidence, the appellate court assumes that the record supports the finding[ ] of the trial court. . . .' " *Id.* (citation omitted).

¶ 30 We conclude Appellant has failed to meet her obligation to marshal and we thus assume the record supports the trial court's finding. Based upon the totality of the record, we cannot say the trial court exceeded its broad discretion in denying Appellant retroactive alimony.[4]

## II. Appellant's Ability to Contribute to her Support

¶ 31 In the first appeal, we concluded the trial court's finding that Appellant was able to contribute to her support and work part-time was well supported by the evidence. *See Wilde v. Wilde*, 969 P.2d 438, 443 (Utah Ct.App.1998). In this second appeal, Appellant again challenges the trial court's finding that she is able to contribute to her support and work part-time. We will not disturb a trial court's factual findings unless they are clearly erroneous. *See id.* at 442 (citing *Hagan v. Hagan*, 810 P.2d 478, 481 (Utah Ct.App.1991)).

¶ 32 Appellant maintains that her condition has worsened since the first trial,

---

4. Because we affirm the trial court's denial of retroactive alimony, we do not reach Appellant's claim that she is entitled to prejudgment interest on retroactive alimony.

rendering her completely unable to work. She first emphasizes that in 1996 the SSA determined she is disabled. We conclude the SSA's determination alone does not establish Appellant was unable to contribute to her support. *Cf. Taliaferro v. Taliaferro*, 188 Ariz. 333, 935 P.2d 911, 915 (Ct.App.1996) (affirming trial court's denial of spousal support to husband although he had been awarded SSA disability benefits).

¶ 33 Appellant next maintains that medical expert testimony conclusively establishes her inability to work and alleges that the trial court arbitrarily disregarded that testimony in favor of other evidence. "The trial court is free to accept or reject an expert's opinion, and may accord to the witnesses' opinion[s] whatever weight it deems proper." *Schindler v. Schindler*, 776 P.2d 84, 89 (Utah Ct.App.1989) (internal citations omitted).

¶ 34 The record shows the trial court did not arbitrarily disregard medical expert testimony offered at trial. The court acknowledged the testimony, but was more persuaded by other witnesses. In addition to the medical experts, the trial court considered testimony by a temporary staffing agency sales president that Appellant's skills are in demand and she could earn between $10 and $15 an hour. The trial court also emphasized the testimony of two individuals who, like Appellant, qualify for SSA disability benefits but who work.

¶ 35 The trial court further emphasized Appellant's testimony that she has made no effort to obtain further employment or training or to take advantage of any program with respect to disabilities or workplace variations available to persons with disabilities, but if she were required to take advantage of such training she would. She also testified she is taking medication, her pain is reduced, and she hopes to return to work.

¶ 36 The trial court also emphasized that videotapes taken of Appellant in March of 1999 show that she is mobile, animated, and can walk without assistance for extended periods of time. The videos show she can do many normal daily activities given her age and physical condition.

¶ 37 We cannot say the trial court's finding that Appellant is able to contribute to her support is clearly erroneous. Although experts clearly indicated that Appellant is unable to work, other evidence offered at trial supports the contrary.[5]

### III. Attorney Fees and Costs Incurred at Trial

¶ 38 Appellant argues she is entitled to attorney fees and costs incurred at trial. Trial courts are afforded broad discretion in deciding whether to award attorney fees and costs in modification proceedings. *See, e.g., Larson v. Larson*, 888 P.2d 719, 726 (Utah Ct.App.1994) (citing Utah Code Ann. § 30–3–3 (1989 & Supp.1994); *Munns v. Munns*, 790 P.2d 116, 123 (Utah Ct.App.1990)). "Where a trial court may exercise broad discretion, we presume the correctness of the court's decision absent 'manifest injustice or inequity that indicates a clear abuse of . . . discretion.'" *Crockett v. Crockett*, 836 P.2d 818, 819–20 (Utah Ct.App.1992) (quoting *Hansen v. Hansen*, 736 P.2d 1055, 1056 (Utah Ct. App.1987)).

---

5. Appellant also asks us to modify the alimony awarded to her by $400 a month to reflect the post-trial loss of room and board from her son. The son was paying only $100 a month, and the trial court determined that fair rental value of the room and board was $400. That fair rental value holds constant whether or not the son lives with Appellant. Further, Appellant raised this change in circumstance after her motion for a new trial, in her counter-motion to compel compliance with the court's order. In fact, in support of her motion for a new trial, she indicated her son was still living with her and contributing to her support.

Raising an issue in a post-trial motion fails to preserve that issue for appeal without evidence that the trial court considered and ruled on the merits of the issue. *See In re Covington*, 888 P.2d 675, 678 (Utah Ct.App.1994). Appellants bear the burden of presenting us with an adequate record that preserves their arguments for appeal. *See Bake v. Bake*, 772 P.2d 461, 466 (Utah Ct.App.1989); *Birch v. Birch*, 771 P.2d 1114, 1116 (Utah Ct.App.1989). After combing the record, we have been unable to find any evidence showing that Appellant's son in fact no longer lives with her. It is also impossible to determine whether the trial court considered this change in circumstance. Thus, we decline to reach this issue.

¶ 39 To recover attorney fees and costs in modification proceedings "the requesting party must demonstrate his or her need for attorney fees, the ability of the other spouse to pay, and the reasonableness of the fees." *Larson*, 888 P.2d at 726. Utah appellate courts have reversed attorney fee awards where the requesting party has failed to show any one of these factors. *See, e.g., Hoagland v. Hoagland*, 852 P.2d 1025, 1028 (Utah Ct.App.1993) (citing *Newmeyer v. Newmeyer*, 745 P.2d 1276, 1280 (Utah 1987)); *Hagan v. Hagan*, 810 P.2d 478, 484 (Utah Ct.App.1991).

¶ 40 The trial court found that Appellant's requests were unreasonable because: (1) "it is impossible to tell from the evidence presented ... [what] portion of the time expended relate[d]" to the modification and the fraud claim; (2) "it is impossible to tell what portion of the time was expended with respect to those issues upon which [Appellant] ... prevailed;" (3) "it is very clear that [Appellant] in this case engaged in overkill to an enormous degree with respect to attorney time, costs, expert witnesses and the like;" (4) "the facts and issues in this matter were not unusually difficult," but Appellant worked "many more hours than what would be reasonable;" (5) "both sides ... filed motions for sanctions and contempt;" (6) "there were violations," primarily on the part of Appellant, "of the Court's pretrial [o]rders and the [r]ules of [p]rocedure with respect to identification of witnesses and disclosure of exhibits;" and (7) "neither side was ready for trial with respect to their evidence, but both sides were adamant about going [forward]."

¶ 41 Appellant first maintains that where a party clearly has need, it is an abuse of discretion to deny any fees and costs because the fees and costs requested are unreasonable. However, Utah appellate courts have denied fees, although the requesting party appeared to have significant need and the other party had the ability to pay, because the requesting party failed to establish the reasonableness of the fees. *See Delatore v. Delatore*, 680 P.2d 27, 28 (Utah 1984) (reversing attorney fee award where requesting party failed to offer evidence of reasonableness, but affirming alimony award to requesting

party because she was unemployed at the time of trial and suffered from several health problems); *Talley v. Talley*, 739 P.2d 83, 84 (Utah Ct.App.1987) (reversing attorney fee award for failure to establish reasonableness of fees although party had established financial need).

¶ 42 Appellant next maintains the trial court exceeded its discretion in determining that her fees and costs were unreasonable because she failed to allocate them between the modification and the fraud claim. In other contexts we have held that the failure to allocate attorney fees between compensable and non-compensable claims constitutes grounds for complete denial. *See Jorgensen's, Inc. v. Ogden City Mall*, 2001 UT App 128, ¶ 32, 26 P.3d 872. We have also recognized an exception to a party's duty to allocate where compensable and non-compensable claims are based on related legal theories and involve a common core of facts. *See id.* at ¶ 27. We cannot say that Appellant demonstrated on the record before the trial court that her modification and fraud claims were supported by a common core of facts.

¶ 43 Appellant argues even if her counsel was required to allocate fees and costs, her counsel's testimony, affidavit, and itemizations offered as exhibits established that allocation. In essence Appellant argues the trial court should have allocated the fees and costs based on the evidence presented. In support of Appellant's request for fees and costs incurred during the first trial, Appellant's counsel submitted a fee itemization with a few entries indicating fees incurred were related to the fraud claim. He also submitted a cost itemization, but that itemization does not make any distinction between the modification and the fraud claim. In the first trial, Appellant's counsel testified that he could not allocate the fees and costs and did not think it was necessary to do so because the modification and fraud claim were intertwined. He resubmitted this same itemization during the second trial although he had been cross-examined by Appellee's counsel regarding allocating the fees in the first trial. However, during the second trial, Appellant's counsel summarily testified that $4,406.25 of the

fees incurred during the first trial were related to work on the fraud claim.

¶ 44 Given that Appellee's counsel had cross-examined him during the first trial about allocating, Appellant's counsel arguably should have been on notice that he needed to allocate. He could have done so in his motion for a new trial, rather than waiting until his second appeal to submit a new fee itemization as a reply brief addendum.[6] Thus, again we cannot say the trial court exceeded its discretion in basing its denial of attorney fees on a failure to allocate.

¶ 45 Appellant next challenges the trial court's findings that her counsel failed to comply with pre-trial orders and rules of procedure and engaged in overkill to an enormous degree with respect to attorney time, costs, and expert witnesses. The second trial was limited, by our remand, to three issues: the amount and duration of modified alimony to be awarded Appellant, reasonable attorney fees and costs on appeal, and attorney fees incurred for the first trial. In retrying the modification, Appellant retained an investigative accountant and again subpoenaed financial records of Appellee, Appellee's employer, and additional entities. These efforts were to establish Appellant's "true income," yet no substantial difference in income was found by the trial court. Therefore, we cannot say that the trial court's findings are clearly erroneous or that the trial court exceeded its discretion in denying attorney fees and costs.

IV. Attorney Fees and Costs on Appeal

¶ 46 Appellant seeks attorney fees and costs for this second appeal. "Generally, when a trial court awards fees in a divorce action to a party who then prevails on appeal, that party will also be entitled to fees on appeal." *Larson v. Larson,* 888 P.2d 719, 727 (Utah Ct.App.1994). However,

when the trial court does not award fees to either party below, then "regardless of which party prevails on appeal," absent a showing of changed circumstances following the trial court's decision warranting such award on appeal, "both parties must bear their own fees on appeal." *Id.* Thus, we deny Appellant's attorney fees and costs on appeal.

## CONCLUSION

¶ 47 We hold the amendment to section 30–3–10.6(2) of Utah's Divorce Statute makes a substantive change in the law, and therefore the amended statute does not apply in this case. We also hold that even if amended section 30–3–10.6(2) applied, it maintains trial court discretion to award modified alimony retroactively for the period following service of the modification pleading. Based on the totality of the record, we conclude: (1) the trial court did not exceed its discretion in denying Appellant's request for retroactive modified alimony; (2) the trial court's finding that Appellant has the ability to contribute to her support is not clearly erroneous; and (3) Appellant failed to establish the reasonableness of her attorney fees and costs, and therefore, the trial court did not exceed its discretion in denying attorney fees and costs incurred at trial. We therefore affirm. Appellant's request for attorney fees and costs for this second appeal is denied.

¶ 48 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge, and GREGORY K. ORME, Judge.

---

**6.** In her reply brief Appellant has offered an entirely new fee itemization. In this itemization Appellant seeks $26,443.75 in fees for both trials. Appellant failed to offer this new itemization below. It is not part of the record; therefore, we refuse to consider it on appeal. *See Finlayson v. Finlayson,* 874 P.2d 843, 847 (Utah Ct.App. 1994).