393 P.2d 472

Harvey A. SJOSTROM, Plaintiff,

v.

Theral V. BISHOP and Ross L. Covington, Defendants.

No. 10054.

Supreme Court of Utah.

June 25, 1964.

CROCKETT, Justice:

This is an original proceeding in this court in the nature of quo warranto by which the plaintiff Harvey A. Sjostrom, former City Attorney, seeks to oust the defendants Theral V. Bishop as Mayor and Ross L. Covington as Commissioner of Logan City.

The defendants were elected for terms of four years each to these offices at the election held November 7, 1961. On January 2, 1962, they duly qualified and assumed the offices mentioned and have since continued to serve therein.

The difficulty with which we are here confronted devolves upon Section 10–6–18, U.C.A.1953 which provides:

"Every elective officer in a city of the first and second class shall within thirty days after qualifying file with the city recorder and publish at least once in a daily newspaper of general circulation in the city a sworn statement of all his election and campaign expenses, showing by whom such funds were contributed. *In case any such elective officer fails to publish such statement, his office becomes vacant,* and such officer in addition thereto shall be guilty of a misdemeanor." (Emphasis added.)

Shortly after learning of the above requirement, the defendants filed and published their statements on June 7, 1962. A

Harvey A. Sjostrom, Logan, for plaintiff.
Preston & Harris, Logan, for defendants.

year and a half later, on January 9, 1964, plaintiff, having conferred with the Attorney General, who declined to institute the action, commenced this suit in his own right as a citizen.[1]

Plaintiff contends that the provisions of Sec. 10–6–18 above quoted are mandatory and self-executing; while defendants argue that they are directory only.

■■■ From our examination of the authorities and the variety of expressions to be found among them, we are impressed with the difficulty that would be encountered in attempting to state any definite and invariable rule by which directory provisions of a statute could always be distinguished from those which are mandatory. It best serves our purpose here to point out generally that there are at least some guide lines to be followed. The most fundamental one is that the court should give effect to the intention of the legislature. That requires us to consider what the figurative "legislative mind" would have intended had it adverted to the particular circumstances we are confronted with for adjudication. This in turn leads us to analyze the statute in the light of its history and background; the purpose it was designed to accomplish; and what interpretation and application will best serve that purpose in practical operation.

■■■ The section referred to, 10–6–18, U.C.A.1953, was enacted substantially in its present form in 1911, at which time we did not have our so-called Corrupt Practices Act. Its evident purpose is that elected officials disclose the sources and expenditures of funds used in elections as a safeguard against corrupt practices. In 1917 our legislature enacted the Corrupt Practices Act, Sections 20–14–1 to 20–14–47, (U.C.A.1953) inclusive, which, evidently calculated toward the same objective, provided that periodic statements of contributions and expenses should be filed *before* election. But it does not expressly repeal the former law, Sec. 10–6–18. Inasmuch as that section provides for publication in a newspaper *after* election, even though its general purpose is also covered by the later Corrupt Practices Act, the sections do not appear to be sufficiently identical that 10–6–18 is completely superseded and thus repealed by implication, as argued by the defendants. That statute being still in effect, the question whether defendants have sufficiently complied with it to avoid being ousted from their offices remains to be dealt with.

■■■ It is of some significance that failure to comply with this statute is made a crime. Accordingly, one accused of violating it is entitled to a construction of its terms liberally in his favor. In view of the serious consequences the forfeiture pro-

1. See Rule 65B(d), U.R.C.P.

vision would have, both upon the individual by ousting him from office, and upon public affairs by nullifying an election, results which are not favored in the law, and which should be reached only for compelling reasons, it seems logical and proper that this rule of liberal construction in favor of the defendants should be applicable also to the forfeiture aspect of this statute.

■ Where statutes governing the conduct of elections require something to be done before the election, so it might have some influence on the election's outcome, it is usually held that the time requirement is mandatory. But where it is not to be done until after the election, so that compliance would not affect the result, the provision as to time is generally considered to be directory only.[2] The filing and publication required by this statute is to be done *after* the election, so they obviously could not have influenced the voters' choice nor the election.

On this point the Wisconsin Court in State v. Industrial Commission,[3] said:

"When there is no substantial reason why the thing by statute required to be done might not as well be done after the time prescribed as before; * * * nothing in the act itself, or in other acts relating to the same subject-matter, indicating that the Legislature did not intend that it should rather be done after the time prescribed than not done at all—the courts will deem the statute directory merely."

A Utah case providing some guidance here is that of State ex rel. Wight v. Park City School District.[4] Plaintiff sought to prohibit defendant School District from levying a tax to maintain a separate high school in Summit County. He contended that the District could not do so because no action had been taken to divide Summit County into two or more districts within the 60 days' period the statute allowed to do so after it became law. In rejecting that contention this court said:

"The general rule is that a statute, prescribing the time within which public officers are required to perform an official act, is directory only, unless it contains negative words denying the exercise of the power after the time specified or the nature of the act to be performed, or the language used by the Legislature shows that the designation of time was intended as a limitation."

The purpose of the statute with which we are concerned was to make the specified

---

2. See 3 Sutherland Statutory Construction, (3rd Ed.) Sec. 5820, p. 113; and see Hester v. Kamykowski, 13 Ill.2d 481, 150 N.E.2d 196; Skaggs v. Fyffe, 266 Ky. 337, 98 S.W.2d 884; Hocking Power Co. v. Harrison, 20 Ohio App. 135, 153 N.E. 155.

3. 233 Wis. 461, 289 N.W. 769.

4. 43 Utah 61, 133 P. 128.

information available to interested members of the public. It was undoubtedly intended that the filing and publication be done within 30 days, which was probably thought to be a reasonable time to do so. However, there is nothing in connection with its purpose, nor in its wording, to compel a conclusion that there was any such urgency as to time that the filing and publication must be done precisely within 30 days or that it should not be done at all.

It seems hardly open to doubt that the defendants having been duly elected and qualified, and having assumed the responsibilities of their offices, were entitled to perform the duties of their offices until ousted therefrom.[5] Assume, for example, that they had continued to serve out their terms without anyone calling attention to the statute or taking any action on the matter. The mere silent existence of this statute, unknown to them, could hardly have destroyed their status completely nor have obliterated their acts as public officials. Surely no sensible person would contend that their offices had in fact been vacant, and that all of their official acts were void. From this it should be plain that they were at least de facto officers until they were challenged.

Upon the basis of the foregoing discussion, it is our opinion that the 30-day time provision in Sec. 10-6-18 is directory only; and that under the circumstances here shown, where the defendants had filed and published the required statements shortly after they learned of the requirement, and before their right to their respective offices was contested, they were not then vulnerable to ouster from such offices.

We have given consideration to the plaintiff's criticism of the content of the defendants' statements, including the averment that the phrases "the Logan City election" and "during the recent municipal election of Logan City" are insufficient identification as to what election and what office; and other alleged deficiencies. It is true that the statements are not so letter perfect nor so complete as to be beyond hypertechnical criticism. Nevertheless, they set forth the required information with sufficient certainty to apprise any interested person of the essential facts. Mere irregularities or lack of strict compliance with statutory requirements, from which no harm can eventuate either to the public or private persons, should not be allowed to nullify actions of those who have attempted to comply with the law.[6] (All emphasis added.)

5. See State ex rel. Stain v. Christensen, 84 Utah 185, 35 P.2d 775.

6. Tanner v. Nelson, 25 Utah 226, 70 P. 984.

The proceeding is dismissed. Costs to defendants.

McDONOUGH and WADE, JJ., concur.

HENRIOD, Chief Justice (concurring in the result):

I concur in the result but for reasons other than stated in the main opinion. I consider it somewhat condones a detour from a clear, but perhaps ridiculous statute. But the statute is there with a clear 30-day interdiction that something *must* be done within the allotted time, otherwise the office is vacant. To say it does not mean what it plainly says is to indulge the luxury of judicial legislation,—not our prerogative nor that of any court, including the U. S. Supreme Court.

I think the main opinion is premature, unnecessary, and not authoritative or desirable at this time, since it determines the merit of this case, which is not at issue presently.

First: There has been no granting by this Court of the petition for the extraordinary writ of Quo Warranto,—a condition precedent to acting on the merits of the petition.[1]

Second: The very facts recited in the main opinion clearly indicate that this Court should not entertain the petition for the writ because of laches.[2]

Third: The petitioner seems to be chargeable with the same inattention to the statutes with which he charges the defendants, since he filed his cost bond a month and a half late. His correspondence with this Court does not indicate, nor is there anything in the record that would justify any other conclusion. It would seem, therefore, that the principle that he who seeks equity must do it is apropos here.

Fourth: The petitioner here seems to be persona non grata in filing this petition, since personally he has no interest in the offices he questions.[3]

Fifth: Having no interest in the offices he questions, and in light of the record in this case, it seems apparent that petitioner has some personal reason to oust from office the defendants who were chosen by the electorate in what has not been shown to be other than a fair election.

Sixth: There are erasures and substitutions of dates on the cost bond that belatedly was filed. These alterations have not been explained satisfactorily and petitioner's correspondence anent thereto, directed to this Court, does not explain either the delay in filing or the date changes.

1. 44 Am.Jur. 138, Quo Warranto, Sec. 69.
2. 44 Am.Jur. 132, Quo Warranto, Sec. 63.

3. 44 Am.Jur. 143–4, Quo Warranto, Secs. 74 and 76.

Quo Warranto is an ancient, extraordinary writ. He who seeks its employment must act with dispatch, show a personal interest in the office he seeks to challenge, follow the rules precisely for its invocation, present a case of considerable and substantial, not minor, concern,[4] not bottomed on personal difference with one holding office.

I am convinced that to grant the petition for this high writ under the circumstances of this case would lend this Court's blessing to a watering down of and aiding in the deterioration of the writ's traditional and historic dignity, where but sparingly it has been used, and only in cases of public moment, where, without its employment, a great injustice might ensue. I think the instant case does not fall within the area contemplated by the use of this ancient writ. Apparently the only person suffering from the defendants' belated publications of their minuscule campaign expenses is the petitioner,—not the majority of the people of Logan that voted for them. The petition should be rejected, if, for no other reason than as an adjunct of the doctrine de minimis.

CALLISTER, J., concurs in the views expressed in the opinion of HENRIOD, C. J.

---

4. 44 Am.Jur. 138, Quo Warranto, Sec. 69.