2005 UT 12

**Summer PUGH, Plaintiff and Appellant,**

v.

**DRAPER CITY, a third class city, and Melanie Dansie, an individual and Draper City Recorder, Defendants and Appellees.**

No. 20030897.

Supreme Court of Utah.

Feb. 11, 2005.

Rehearing Denied May 27, 2005.

Joann Shields, Salt Lake, for plaintiff.

Michael Z. Hayes, Todd J. Godfrey, Salt Lake, for defendant.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 This is an appeal from the district court's denial of a petition for declaratory relief. Plaintiff Summer Pugh was a candidate for the November 2003 Draper City Council election, but her name was removed from the ballot when Draper City determined that she had not complied with Utah Code section 10–3–208. Ms. Pugh filed a declaratory judgment action against Draper City and Draper City Recorder Melanie Dansie, seeking a pronouncement that she had substantially complied with Utah Code section 10–3–208 and should have been entitled to ballot access. She also sought attorney fees and costs.

¶ 2 At an expedited hearing, the trial court refused to grant Ms. Pugh's petition for equitable relief on the ground that she had not complied with the requirements of section 10–3–208. For the reasons set forth below, we affirm.

## BACKGROUND

¶ 3 In 2003, Utah Code section 10–3–208 was entitled "Campaign financial disclosure in municipal elections." Utah Code Ann. § 10–3–208 (2003).[1] This act requires candidates for city office to file an interim report of campaign contributions and expenditures "at least once seven days before the date of the municipal election." Id. § 10–3–208(1)(b)(i). Another provision of this act, added in 2002, provides that failure to comply with the reporting requirement is an infraction requiring the city recorder to notify elections officers, who must then "remove the name of the candidate" from the ballot. Id. § 10–3–208(8)(a).

¶ 4 In early August 2003, Draper City Recorder Melanie Dansie sent a letter to Ms. Pugh and the other Draper City candidates, with an attached excerpt of section 10–3–208, notifying them of these requirements. To comply with this state statute and similar city ordinances, Draper City determined that all candidates must file campaign finance disclosures no later than 5 p.m. on October 28, 2003. Ms. Pugh filed her financial disclosure with the Draper City Recorder's Office the following day, on October 29. That same day, Ms. Dansie mailed Ms. Pugh a letter stating that Ms. Pugh's name would be removed from the ballot if she could not provide proof of timely filing.[2] Ms. Pugh did not

---

1. This statute was repealed and a new version enacted in 2004. See Utah Code Ann. § 10–3–208 (Supp.2004). The events at issue here occurred in 2003, and we therefore refer to the 2003 version of the statute in conducting our analysis.

2. Another candidate also failed to file his financial statement by 5 p.m. on October 28, 2003, and Draper City mailed him a similar letter. His situation was later resolved when he provided proof that he had timely mailed the disclosure statement. During this same period, fourteen candidates from Brigham City, Spanish Fork, Lehi, Eagle Mountain, and Draper were also notified that they would be disqualified because they had not filed interim financial disclosure statements. These candidates sued to regain ballot access, and nine of them succeeded.

provide such proof and her name was subsequently removed from the ballot.

¶ 5 Ms. Pugh filed a petition with the Third District Court in Salt Lake County to regain ballot access. Her hearing was initially scheduled to take place Monday, November 3, 2003, at 1:30 p.m., but was subsequently moved to 11 a.m. Ms. Pugh alleges that she learned of this time change only twenty minutes before the scheduled hearing was to take place and was consequently unable to attend. The hearing proceeded without her. During the hearing, Ms. Pugh's original counsel withdrew and was replaced by new counsel. At the conclusion of the hearing, the district court denied Ms. Pugh's petition.

¶ 6 Ms. Pugh brought this appeal, raising three primary issues regarding whether:[3] (1) candidates are required to strictly comply with section 10–3–208, or whether the substantial compliance standard set forth in the Election Code applies to that section; (2) Ms. Pugh can raise constitutional questions for the first time on appeal, including determination whether there was a due process violation when she was unable to attend her hearing; and (3) Ms. Pugh is entitled to attorney fees.

## STANDARD OF REVIEW

■ ¶ 7 The interpretation of statutory provisions presents a question of law, which we review for correctness, granting no deference to the trial court. *Utah Safe to Learn–Safe to Worship Coalition v. Utah*, 2004 UT 32, ¶ 10, 94 P.3d 217; *Grand County v. Emery County*, 2002 UT 57, ¶ 6, 52 P.3d 1148.

## ANALYSIS

## I. STATUTORY INTERPRETATION OF SECTION 10–3–208

■ ¶ 8 Ms. Pugh urges us to hold that the substantial compliance standard found in Title 20A of the Election Code[4] governs this controversy and should have been applied by the lower court. We disagree, holding that all candidates must strictly comply with section 10–3–208. Its provisions are independent of the Election Code, and the latter's provisions have no bearing on the former's requirements.

¶ 9 Nothing in section 10–3–208 indicates that the substantial compliance standard found in the Election Code applies to that provision. Because these are two independent sets of regulations, we will not apply provisions of the Election Code to section 10–3–208 absent an indication that such was the legislative intent. *See Miller v. Weaver*, 2003 UT 12, ¶ 21, 66 P.3d 592 (indicating that when the legislature wishes to create certain rights it uses "explicit language" that does not "require anyone to add language or make inferences to impart the full meaning of the statute"); *I.M.L. v. State*, 2002 UT 110, ¶ 29, 61 P.3d 1038 ("Given that the statute contains no indication ... there is no cause to presume the legislature intended the statutes to be read together."); *Monson v. Hall*, 584 P.2d 833, 835–36 (Utah 1978) (indicating that "statutory construction requires construction ... congruous with expressed intent, and the applicability of the law in general").

---

3. Ms. Pugh actually presents fourteen arguments on appeal, but these issues have been consolidated into the three listed above.

4. The provision in Title 20A governing election controversies provides:
(1) (a)(i) Whenever any controversy occurs between any election officer or other person or entity charged with any duty or function under this title and any candidate, or the officers or representatives of any political party, or persons who have made nominations, either party to the controversy may file a verified petition with the district court.
(ii) If a petition is filed, the petitioner shall serve a copy of the petition on the respondents on the same day that the petition is filed with the court.

(b) The verified petition shall identify concisely the nature of the controversy and the relief sought.
(2) After reviewing the petition, the court shall:
(a) issue an order commanding the respondent named in the petition to appear before the court to answer, under oath, to the petition;
(b) summarily hear and dispose of any issues raised by the petition *to obtain substantial compliance with the provisions of this title by the parties to the controversy;* and
(c) make and enter orders and judgments, and issue the process of the court to enforce all of those orders and judgments.
Utah Code Ann. § 20A–1–404(1)–(2) (2003) (emphasis added).

¶ 10 Additionally, it is a general rule that where two statutory standards potentially conflict with each other, "the provision more specific in application governs over the more general provision." *Hall v. Dep't of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 958. In this case, section 10–3–208, which specifically applies to campaign disclosure statements, governs over the Election Code, which applies more generally to all elections.[5]

¶ 11 Having concluded that the Election Code does not apply to the filing requirements contained in section 10–3–208, we analyze section 10–3–208 on its own terms. We conclude that its language, purpose, and structure require strict compliance with the standards enunciated therein.

¶ 12 A fundamental rule of statutory construction is that we determine "[a] statute's meaning by first looking to the statute's plain language." *Pinetree Assocs. v. Ephraim City*, 2003 UT 6, ¶ 13, 67 P.3d 462 (internal quotation omitted); *see also Lovendahl v. Jordan Sch. Dist.*, 2002 UT 130, ¶ 21, 63 P.3d 705. The plain meaning of section 10–3–208 is clear: individual candidates are required to timely disclose campaign expenditures. Candidates for city office must file an interim report of campaign contributions and expenditures with the city recorder "at least once seven days before the municipal general election." Utah Code Ann. § 10–3–208(1)(b)(i). A report is timely when "it is received in the municipal recorder's office no later than 5 p.m. on the date that it is due." *Id.* § 10–3–208(8)(c)(i). Furthermore, subsection (8)(a), the penalty clause of this section, specifically provides that if the candidate fails to file an interim report, "the city recorder shall, after making a reasonable attempt to discover if the report was timely mailed, inform the appropriate election officials who: shall, if practicable, remove the name of the candidate by blacking [it] out" or "inform the voters by any practicable method that the candidate has been disqualified." *Id.* § 10–3–208(8)(a)(i)–(ii).

¶ 13 The statute repeatedly uses the word "shall," which is "usually presumed mandatory and has been interpreted as such previously in this and other jurisdictions." *Bd. of Educ. v. Salt Lake County*, 659 P.2d 1030, 1033 (Utah 1983); *see also Provo City v. Hansen*, 601 P.2d 141, 143 (Utah 1979) (indicating that in Utah Code section 73–3–15, the words "shall" and "must" are mandatory and not discretionary). Ms. Pugh, however, argues that the language of the statute is not mandatory, but only directory, citing *Sjostrom v. Bishop*, 15 Utah 2d 373, 393 P.2d 472 (1964). In *Sjostrom*, candidates did not timely file their post-election disclosure statements, yet we held that the candidates had substantially complied with the deadlines and would not be removed from office. *Id.* at 475. Ms. Pugh argues that *Sjostrom's* holding, requiring only substantial compliance with the statute because "the defendants had filed and published the required statements shortly after they learned of the requirement, and before their right to their respective offices was contested," *id.*, should apply to her as well.

¶ 14 *Sjostrom*, however, specifically distinguished conduct that was to take place before an election from conduct that was to take place after an election. It stated:

> Where statutes governing the conduct of elections require something to be done *before* the election, so it might have some influence on the election's outcome, it is usually held that the time requirement is mandatory. But where it is not to be done until after the election, so that compliance would not affect the result, the provision as to time is generally considered to be directory only.

*Id.* at 474. Because section 10–3–208 requires the candidates to file their financial statements before the election, *Sjostrom* does not apply.

¶ 15 Cases from other jurisdictions also support our construction of the language in question. In *State v. Marshall*, 633 P.2d 227, 229 (Alaska 1981), a case involving a statute

---

5. Ms. Pugh, arguing that *Nowers v. Oakden*, 110 Utah 25, 169 P.2d 108 (1946), applies to this controversy, mischaracterizes its holding. *Nowers* states that "we shall not undertake to discuss

the cases cited to the proposition that where the legislature specifies the form of submission of such propositions, substantial compliance with its directions is mandatory." *Id.* at 116.

requiring candidates to file a list of election contributions seven days before an election and imposing sanctions where such deadlines are not met, the Alaska Supreme Court held that candidates must strictly comply with the statute. The Alaska court also distinguished statutes requiring specific conduct prior to an election from those requiring conduct subsequent to the election. *Id.* at 234–35. The court stated, "[p]re-election reports, [as opposed to post-election reports,] do provide the electorate with information that may affect its decision; manifestly the timeliness of those reports is critical." *Id.* at 235. Because they provide the electorate with such important information, "election law filing deadlines are mandatory, and therefore substantial compliance is not sufficient." *Id.*; *see also Tobin v. May,* 72 A.D.2d 648, 421 N.Y.S.2d 441, 442 (1979); *In re Gibson,* 960 S.W.2d 418, 421 (Tex.App.1998); *Brady v. Hechler,* 176 W.Va. 570, 346 S.E.2d 546, 548 (1986).

¶ 16 The structure of section 10–3–208 also indicates that the legislature intended that candidates strictly comply with its provisions. Although Ms. Pugh contends that this statute only requires substantial compliance because the penalty provision does not explicitly use the words "timely file" or "file seven days before an election," the structure of the statute undermines that argument. For example, section 10–3–208(1)(b)(i) requires that each candidate file an expenditure report "at least once seven days before the municipal general election." Utah Code Ann. § 10–3–208(1)(b)(i). In subsection (8)(a), the statute clearly dictates that if a candidate does not file an interim campaign expenditure report, the city recorder should notify election officials, who can then take the candidate's name off the ballot. *Id.* § 10–3–208(8)(a). In subsection (8)(c), the statute proceeds to define when a report "is considered filed," stating that the report must be "received in the municipal recorder's office no later than 5 p.m. on the date that it is due." *Id.* § 10–3–208(8)(c). Thus, although subsection (8) does not directly refer to the seven-day standard, it does clearly refer to a due date, thereby indicating that the penalty provision applies if the candidate does not file on the due date, in this case seven days before the election.

Ms. Pugh's argument that the penalty provision applies only if the candidate does not file at all is simply inconsistent with the structure of the statute.

¶ 17 We hold that the plain language and structure of section 10–3–208 require strict compliance with its interim reporting requirements. Candidates are unambiguously required to file financial disclosure statements seven days before the election. In this case, Ms. Pugh was required to file these statements by 5 p.m. on October 28. Because she did not file her statement until October 29, she did not strictly comply with the plain meaning of the statute, and the city recorder correctly directed city elections officials to remove her name from the ballot.

## II. CONSTITUTIONAL CLAIMS

■ ¶ 18 Ms. Pugh makes several constitutional claims for the first time on appeal, arguing that section 10–3–208 is unconstitutionally vague and violates fundamental constitutional freedoms of speech and association and equal protection under the law. "It is well-established that we generally will not address issues raised for the first time on appeal" unless a party can demonstrate "exceptional circumstances." *In re Schwenke,* 2004 UT 17, ¶ 34, 89 P.3d 117; *see also Bd. of Trs. v. Keystone Conversions,* 2004 UT 84, ¶ 32 n. 8, 103 P.3d 686. Ms. Pugh has not provided us with sufficient information showing that she meets this high standard. *See View Condo. Owners Ass'n v. MSICO, LLC,* 2004 UT App 104, ¶ 37, 90 P.3d 1042 (indicating that the responsive brief did not contain sufficient authority to find exceptional circumstances). Therefore, we will not consider these constitutional questions.

■ ¶ 19 Ms. Pugh also argues that she was denied due process of law when she was not able to attend her hearing. In determining such due process claims, we look at the "time, place, and circumstances" surrounding the claim. *Color Country Mgmt. v. Labor Comm'n,* 2001 UT App 370, ¶ 35, 38 P.3d 969, *aff'd, Thomas v. Color Country Mgmt.,* 2004 UT 12, 84 P.3d 1201. Despite requesting a continuance, Ms. Pugh's legal counsel did not object to proceeding in her absence and did

not appeal the trial court's denial of the continuance. In light of these circumstances, we decline to consider whether Ms. Pugh's due process rights were violated when she could not attend her hearing.

 ¶ 20 Ms. Pugh requests attorney fees in this matter pursuant to Utah Code section 10–3–208(9)(a)–(b), which states that a party may bring a civil action to "enforce the provisions of this section or any ordinance adopted under this section," and that "the court may award costs and attorney's fees to the prevailing party." *Id.* § 10–3–208(9)(a)–(b) (2003). Given the determination that candidates are required to strictly comply with the provisions of section 10–3–208, Ms. Pugh is not a prevailing party and is not entitled to attorney fees.

## CONCLUSION

¶ 21 We hold that the district court did not err in refusing to grant Ms. Pugh's petition for declaratory relief. Ms. Pugh did not strictly comply with the requirements of section 10–3–208 and was not entitled to ballot access. Additionally, she has shown no exceptional circumstances justifying consideration of her constitutional questions for the first time on appeal. Accordingly, we affirm.

¶ 22 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.