2005 UT App 323

**MOAB CITIZENS ALLIANCE** and its members, **John Weisheit, Bret Blosser, and Mark Sundeen, Plaintiffs and Appellants,**

v.

**GRAND COUNTY** and the Grand County Council, and Intervenor State of Utah, School and Institutional Trust Lands Administration, Defendants and Appellees.

No. 20040175–CA.

Court of Appeals of Utah.

July 21, 2005.

Rehearing Denied Aug. 30, 2005.

Jeffrey W. Appel and Cecilia M. Romero, Salt Lake City, for Appellants.

W. Scott Barrett, Logan, and Dawn J. Soper, Mark L. Shurtleff, and John W. Andrews, Salt Lake City, for Appellees.

Before Judges JACKSON,[1] ORME, and THORNE.

## OPINION

ORME, Judge:

¶ 1 This case involves a dispute over the annexation into an improvement district of land owned by Utah's School and Institutional Trust Lands Administration and located in Grand County, Utah. Moab Citizens Alliance and some of its individual members appeal from a judgment and order of dismissal entered by the district court. We affirm.

## BACKGROUND

¶ 2 Utah's School and Institutional Trust Lands Administration (SITLA) owns land in Grand County, southeast of Moab, that is the subject of this dispute. In April of 2001, SITLA filed a petition with the Grand County Council to annex the land into the Spanish Valley Water and Sewer Improvement District (the District) for the purpose of providing water and sewer services to a proposed development, basically a resort complex, to be constructed on the land. The petition was filed pursuant to Utah Code section 17A–2–332, which governs "the annexation of an area into an improvement district." Utah Code Ann. § 17A–2–332 (1999).

¶ 3 The proposed development and associated annexation of SITLA's lands into the District were the subject of some controversy in Grand County. The attorney for Moab Citizens Alliance (MCA), on behalf of MCA, sent a series of letters to the Grand County Council, contending that the proposed annexation, if effectuated, and the related petition process violated the law for a number of reasons. Among other things, MCA argued that the Grand County Council was required under Utah Code section 17A–2–333 to provide notice of and a hearing on the proposed annexation before approving the annexation. See id. § 17A–2–333(1)(a)–(c).

¶ 4 Despite MCA's objections, on November 5, 2001, the Grand County Council enacted a resolution approving the annexation pursuant to section 333(3)'s mandatory no-hearing provision. See id. § 17A–2–333(3). The resolution conditioned the annexation on the State Engineer determining that adequate water was available to support the annexation. On February 4, 2002, the Grand County Council passed an amended resolution, which conditionally granted the annexation, subject to the State Engineer's approval of a water rights transfer. By the terms of the resolution, once the State Engineer approved the water rights transfer the property would be "annexed into [the District] without further Council action." The State Engineer filed a memorandum decision on February 14, 2003, approving the water rights transfer. Nevertheless, the State Engineer's approval, by its own terms, was sub-

1. This is one of the last opinions to have been acted upon by our colleague, Judge Norman H. Jackson. Judge Jackson was one of seven original appointees to the Utah Court of Appeals. He retires after over eighteen years of dedicated service to the court. His judicial tenure followed a distinguished career as a lawyer in Richfield, most recently with the firm of Jackson, McIff & Mower.

While on the court, Judge Jackson made a specialty of standards of review. His published treatments of this important topic were of inestimable help to the appellate bar of this state. See 12 Utah B.J. 8 (1999); 1 Utah B.J. 8 (1994). Rule 24(a)(5) of the Utah Rules of Appellate Procedure, requiring that briefs include a discussion of the standard of review for each issue, is his brainchild. We will miss him as a colleague, but we look forward to his continued friendship and sincerely wish him good health and much happiness in the years ahead.

ject to a thirty-day appeal period, which ended March 16, 2003, after which the approval became final.

¶ 5 On April 14, 2003, MCA and its individual members John Weisheit, Bret Blosser, and Mark Sundeen (collectively, "Plaintiffs"), filed a complaint in the district court against the Grand County Council and Grand County to set aside the annexation. SITLA intervened as a defendant. Plaintiffs subsequently filed a motion for judgment on the pleadings, or in the alternative, for summary judgment. SITLA then filed a cross-motion for summary judgment, which the Grand County Council and Grand County (collectively, "Defendants") also adopted and joined in.

¶ 6 After hearing arguments, the district court issued a memorandum decision granting Defendants' motion for summary judgment. It held, in relevant part, that Plaintiffs were barred from petitioning the district court because they had failed to file a proper written protest with the county prior to filing suit as required by Utah Code section 17A–2–304(3)(b) and that, even if Plaintiffs were not barred from filing suit in the district court, Plaintiffs had failed to file suit within thirty days after the resolution was adopted by the Grand County Council, as required by Utah Code section 17A–2–304(4)(b). The district court then entered a judgment and order of dismissal. Plaintiffs now appeal the district court's decision.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Plaintiffs raise several issues on appeal. Given our analysis, however, we need consider only two of these issues. First, we will consider whether the district court erred in holding that Plaintiffs' petition to the district court was untimely under Utah Code section 17A–2–304(4)(b) because it was not filed within thirty days after the resolution was adopted. *See* Utah Code Ann. § 17A–2–304(4)(b) (1999). Second, we will consider whether the district court erred in ruling that Plaintiffs did not file a written protest as

required by Utah Code section 17A–2–304(3)(b). *See id.* § 17A–2–304(3)(b). In general, "[i]n reviewing a summary judgment, we accord no deference to the trial court and review its ruling for correctness." *Price Dev. Co. v. Orem City,* 2000 UT 26,¶ 9, 995 P.2d 1237. This is especially true when the key questions are ones of statutory interpretation, which are themselves matters of law. *See State v. Mooney,* 2004 UT 49,¶ 9, 98 P.3d 420.

## ANALYSIS

¶ 8 In order to effectively petition a district court for review of the actions of a county legislative body regarding an annexation like the instant one, a property owner must file a complaint "within 30 days after the date of the resolution establishing [the annexation of land into] the improvement district."[2] Utah Code Ann. § 17A–2–304(4)(b) (1999). The district court held that because Plaintiffs' petition was not filed within thirty days of when the Grand County Council adopted the annexation resolution, their petition was untimely. Plaintiffs argue, however, that they could not have filed within thirty days of the time the Grand County Council adopted the resolution because the issue was not ripe for adjudication at that time. According to Plaintiffs, until the State Engineer either approved or disapproved the water rights transfer, the district court could not properly have exercised its jurisdiction. Thus, they argue that the time period within which to file a petition started on March 16, 2003, the date that the State Engineer's decision became final, thereby effectuating the annexation by the terms of the amended annexation resolution.

¶ 9 "Ripeness occurs when 'a conflict over the application of a legal provision [has] sharpened into an actual or imminent clash of legal rights and obligations between the parties thereto.'" *Boyle v. National Union Fire Ins. Co.,* 866 P.2d 595, 598 (Utah Ct.App.1993) (alteration in original) (citation omitted). Thus, "court[s] will not issue advi-

**2.** Although the quoted statutory provision addresses only the initial establishment of improvement districts and not, specifically, the later annexation of property into an existing district, the annexation provisions reference this section. Neither side disputes that the same statutory scheme applies in both contexts as concerns the matters in issue.

sory opinions or examine a controversy" until such a clash actually occurs. *State v. Herrera*, 895 P.2d 359, 371 (Utah 1995).

¶ 10 We agree with Plaintiffs that there was no reviewable annexation resolution until the State Engineer acted. When the Grand County Council originally passed the resolution in November of 2001 that approved the annexation of SITLA's lands, it conditionally granted the annexation "subject to the receipt of a State Engineer's report showing adequate water is available to serve the area." On February 4, 2002, the Grand County Council passed an amended resolution, which conditionally granted SITLA's request to annex subject to the State Engineer's approval of a water rights transfer.

¶ 11 According to the very terms of the amended resolution, the annexation did not become effective until the State Engineer approved the water rights transfer. If the State Engineer did not approve the transfer, the annexation would not become effective. Defendants argue that regardless of whether the annexation would have occurred, the legal issues presented were ripe for adjudication because all of the substantive issues before the district court were "extant" at the time of the resolution. Defendants' argument minimizing the need for an actual controversy is legal blasphemy.

¶ 12 Even if all of the substantive issues were extant at the time the resolution was adopted, the annexation itself was not. If the State Engineer had denied the transfer, the annexation would not have occurred and the dispute would have vaporized. If so, any prior judicial action would have been a complete waste of judicial and other resources. *See Stokes v. Van Wagoner*, 1999 UT 94, ¶ 7, 987 P.2d 602 (stating "a party that files a claim prior to the time it accrues is likely to have that claim dismissed for unripeness" because "such a suit would be speculative and could be wasteful of judicial and other resources"). Courts simply should not expend time and effort deciding issues in a controversy that may never materialize. This is true no matter how easy it might be to dispose of controlling principles in the abstract. Therefore, the time for filing a petition did not begin to run until the issue became ripe for adjudication, that time being when the State Engineer's memorandum decision actually became final, i.e., March 16, 2003. Plaintiffs' petition was timely filed because it was filed within thirty days of that date.

■ ¶ 13 We next consider whether the district court erred in ruling that Plaintiffs did not file a written protest in conformity with Utah Code section 17A-2-304(3)(b). *See* Utah Code Ann. § 17A-2-304(3)(b) (1999). Although we have concluded that Plaintiffs filed suit in a timely manner, this appeal turns on the second issue—whether Plaintiffs filed an adequate written protest that met the requirements of section 304(3)(b). *See id.* If Plaintiffs did not meet the requirements of section 304(3)(b), then they were barred, by statute, from seeking judicial review in the district court. *See id.* § 17A-2-304(4)(a).

¶ 14 Utah Code sections 17A-2-332 and 17A-2-333 govern the methods of annexation, the appropriate resolutions, the notice of an intent to annex, and the procedure for judicial review in connection with annexations. *See id.* §§ 17A-2-332 to -333 (1999). Section 333 sets forth procedures for providing notice to the public of the county legislative body's intent to annex an area into an improvement district after a resolution has been adopted pursuant to section 332. *See id.* § 17A-2-333(1)(a)–(c). However, if all "owners of real property" within the area proposed to be annexed sign a petition filed under section 332, the annexation becomes mandatory, and the county legislative body must bypass the notice and hearing provisions and "by resolution, immediately declare the area to be annexed to the improvement district." *Id.* § 17A-2-333(3)(a)(ii)(A). Thus, in essence, this provision provides the county with a quick route to annexation, enabling it to bypass the notice and hearing requirements and immediately declare an area to be annexed into an improvement district. *See id.* § 17A-2-333(3)(a).

¶ 15 SITLA purported to petition for annexation under section 333(3)(a) and the Grand County Council immediately adopted

the resolution.[3] Plaintiffs now argue, however, that SITLA was prohibited from utilizing section 333(3)'s mandatory annexation provision because SITLA is not an "owner[ ] of real property" as defined under the statute. *Id.* § 17A–2–333(3)(b). Section 333(3)(a) provides that, "[i]f all the owners of real property within the area proposed to be annexed have signed a petition filed under Section 17A–2–332," the county is exempt from complying with the notice provisions required under the statute. *Id.* § 17A–2–333(3)(a). "[O]wners of real property" for this purpose are defined as those owners who are listed on "the last assessment roll for county taxes completed prior to the filing of the petition." *Id.* § 17A–2–333(3)(b).

■ ¶ 16 SITLA is not a taxpaying entity and, thus, was not listed on "the last assessment roll for county taxes." Thus, given the plain language of the statute, SITLA is not an owner of real property for purposes of the statute and was not authorized to petition for mandatory annexation. *See Pugh v. Draper City,* 2005 UT 12, ¶ 12, 519 Utah Adv. Rep. 9, 114 P.3d 546 ("A fundamental rule of statutory construction is that we determine '[a]

statute's meaning by first looking to the statute's plain language.' ") (alteration in original) (citations omitted). This is a sensible interpretation as well because, unlike a taxpaying owner, a tax-exempt owner will not be paying its own way for the services and infrastructure that rely on a tax base for their support.[4]

¶ 17 This conclusion notwithstanding, Plaintiffs' argument that SITLA was not authorized to petition for mandatory annexation and, therefore, that the annexation was invalid, is unavailing. In order to be qualified to petition the district court for review of the Grand County Council's actions regarding the proposed annexation, in particular its decision to utilize the mandatory annexation provision, Plaintiffs were required under section 17A–2–304(4)(a) to have filed a written protest in accordance with section 17A–2–304(3)(b). *See* Utah Code Ann. §§ 17A–2–333 (2)(d), –304(4)(a), –304(3)(b) (1999). If a written protest consistent with section 304(3)(b) has not been filed, then the property owner cannot seek review from the district court. *See id.* § 17A–2–304(4).[5]

3. We note that the resolution appears not actually to be in compliance with the statute because, as discussed above, it provided for delayed and conditional annexation, not immediate annexation as the statute mandates.

4. Utah Code sections 17A–2–331 to –334, which governed annexations, *see* Utah Code Ann. §§ 17A–2–331 to –334 (1999), have subsequently been repealed and replaced by provisions contained within Utah Code sections 17B–2–501 to –517, effective April 30, 2001. *See* Utah Code Ann. §§ 17B–2–501 to –517 (2004). While the parties do not dispute that the statute in effect on the date the annexation petition was filed should govern this appeal, MCA does persuasively argue that the legislative change reveals that the Legislature always intended to preclude nontaxpayers, e.g., SITLA and other political subdivisions of the state, from utilizing the statute's mandatory annexation provision when such subdivisions provide no tax support for the extension of services to the annexed land.

5. Plaintiffs argue that because the county legislative body annexed the land under the mandatory annexation provision, Plaintiffs were excused from filing a protest under section 304 before petitioning the district court for a review of the county's actions. Their argument is based on the assumption that if the mandatory annexation

provision is invoked, *all* of the requirements under section 304 are inapplicable. This is not the case, however. Although it is true that when the mandatory annexation provision is employed, the county legislative body is no longer required to comply with some of 304's provisions, other provisions under 304 still apply. Section 333's mandatory annexation provisions state in part: "If all the owners of real property within the area proposed to be annexed have signed a petition filed under Section 17A–2–304: (i) ... the requirement under Subsection (1)(c) to comply with Section 17A–2–304 do[es] not apply." Utah Code Ann. § 17A–2–333(3)(a) (1999). Subsection (1)(c) provides that "[b]efore adopting a resolution ... the county legislative body shall ... comply with the provisions of Section 17A–2–304 *as to* notice, publication, taxpayer's protests, evidence of ownership, and public hearing." *Id.* § 17A–2–333(1)(c) (emphasis added). Under sections 333(3)(a)(i) and 333(1)(c), *the county legislative* body is excused from complying with section 304's provisions regarding "notice, publication, taxpayer's protests, evidence of ownership, and public hearing." *Id.* § 17A–2–333(1)(c). *See id.* § 17A–2–333(3)(a)(i). Section 333 does not excuse a *property owner* from filing a written protest with the county before seeking judicial review under section 304(4). Thus, Plaintiffs were required to file a proper protest with the county under section 304(3)(b).

¶ 18 Section 304(3)(b) provides that *"[a]ny taxpayer within the district* may ... protest against the establishment of the district by filing a signed written protest with the county clerk of the county in which the district is located." *Id.* § 17A–2–304(3)(b) (emphasis added). Defendants argue that the letters of protest MCA filed with the Grand County Council failed to recite that either MCA or any of its members were "taxpayer[s] within the district." Thus, they argue that MCA's protests did not conform with 304(3)(b)'s requirements.

¶ 19 Section 304(3)(b) does not specifically require a person filing a protest to recite in the protest that he or she is a property owner or a taxpayer within the District. However, the requirement that the person filing the protest in fact be a "taxpayer" is not a meaningless formality. Only taxpaying property owners in an improvement district have standing to contest an annexation. Others do not. Thus, letters from others do not qualify as protests under section 17A–2–304(3)(b). *See id.* If the letter is from an affected taxpayer, with standing to bring an action for judicial review if a protest is unavailing, a county must take it seriously. In contrast, if it is from someone who lacks that standing, a county is free to ignore it.

¶ 20 In the present case, the three letters sent to the Grand County Council on behalf of MCA gave no indication that MCA was a taxpaying property owner in the District. MCA is in fact not such a taxpayer, although some of its individual members apparently are.[6] However, the protests did not mention this crucial fact. Rather, the letters sent by MCA's legal counsel simply stated that the letters were filed "on behalf of the Moab Citizens Alliance." The letters did not mention any of the individuals by name, nor assert that MCA was an association of affected taxpayers. Consequently, there was no reason for the Grand County Council to treat the letters as protests by affected taxpayers. Accordingly, we agree with the district court that the requirements of 304(3)(b) were not met because the letters filed by counsel for MCA, specifically on behalf of MCA, do not qualify as written protests by taxpaying owners of property already in the District.

¶ 21 Because Plaintiffs failed to comply with the requirements of section 304(3)(b), they were precluded from filing suit in district court. *See id.* § 17A–2–304(4)(a). Accordingly, while we disagree with several of its subsidiary conclusions, we affirm the district court's grant of summary judgment to Defendants and the court's order of dismissal.

## CONCLUSION

¶ 22 We disagree with the district court's conclusion that Plaintiffs' complaint was untimely filed. However, we affirm the district court's grant of summary judgment on the ground that Plaintiffs did not comply with Utah Code section 17A–2–304(3)(b)'s written protest requirement, which consequently barred them from seeking judicial review of the challenged annexation.

¶ 23 WE CONCUR: NORMAN H. JACKSON and WILLIAM A. THORNE JR., Judges.

---

6. In view of the fact that MCA's written protests were inadequate in that they failed to allege that they were being filed by a taxpayer and in fact they were not filed by a taxpayer, whether or not MCA additionally erred in filing the protests with the Grand County Council instead of the county clerk is inconsequential in this case, and we decline to address the issue.