2006 UT App 393

**LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff and Appellee,**

v.

**Burdene SHORES and Unior Shores, Defendants and Appellants.**

No. 20050291–CA.

Court of Appeals of Utah.

Sept. 28, 2006.

C. Peter Whitmer, Pleasant Grove, and Ronald W. Ady, Salt Lake City, for Appellants.

Mitchel T. Rice, Joseph E. Minnock, and Sara N. Becker, Salt Lake City, for Appellee.

Before Judges BENCH, BILLINGS, and ORME.[1]

## OPINION

BILLINGS, Judge:

¶ 1 Defendants and Counterclaimants Burdene Shores (Mrs. Shores) and Unior Shores (Mr. Shores) collectively appeal the trial court's grant of Plaintiff and Counterclaim Defendant Liberty Mutual Insurance Company's (Liberty Mutual) motion for summary judgment on the Shoreses' declaratory relief claims. The Shoreses claim the trial court erred in upholding the validity of an auto insurance policy step-down provision that limits Mrs. Shores's recovery to the statutory minimum limit of $25,000 for injuries caused by her husband Mr. Shores's alleged negligence. Additionally, Mrs. Shores individually appeals the trial court's grant of Liberty Mutual's motion to dismiss her bad faith counterclaim. We affirm the trial court's dismissal of Mrs. Shores's bad faith counterclaim, and we vacate the trial court's grant of Liberty Mutual's motion for summary judgment and remand for proceedings consistent with this opinion.[2]

## BACKGROUND

¶ 2 In determining whether the trial court properly granted a motion for summary judgment or a motion to dismiss, we review the facts "in the light most favorable to the non-moving party." *Johnson v. Hermes Assocs.*, 2005 UT 82, ¶¶ 1, 11, 128 P.3d 1151 (quotations and citation omitted); *Riddle v. Perry*, 2002 UT 10, ¶ 2, 40 P.3d 1128.

¶ 3 The Shoreses are an elderly, retired couple. Mrs. Shores is presently seventy-seven years old, and Mr. Shores is eighty-four years old. Mr. Shores is a U.S. military retiree.

¶ 4 In 2002, the Shoreses began receiving direct mail solicitations from Liberty Mutual, advertising the availability of preferred automobile insurance rates for retired military personnel. Sometime after receiving these solicitations, the Shoreses met with a local Liberty Mutual insurance agent to discuss available insurance policies.

¶ 5 After meeting with the Liberty Mutual insurance agent, the Shoreses purchased a personal automobile insurance policy from Liberty Mutual (the Policy) with coverage from January 12, 2003, to January 12, 2004. Both Mr. and Mrs. Shores are named insureds under the Policy. Although the Policy's declarations (the Declarations) state that bodily injury liability coverage under the Policy is $100,000 per person and $300,000 per accident, the Policy contains a number of endorsements, including an additional exclusion to Part A, entitled "Liability

---

1. Judge Orme, having heard oral argument but having thereafter recused himself, does not participate in the court's decision.

2. Mrs. Shores also individually appeals the trial court's denial of her Utah Rule of Civil Procedure 56(f) motion for continuance to conduct further discovery. *See* Utah R. Civ. P. 56(f). Because we reverse the trial court's grant of summary judgment, we do not address this claim.

Coverage," of the auto policy agreement (the Insuring Agreement). When read in conjunction with Part A of the Insuring Agreement, this exclusion states that although

> [Liberty Mutual] will pay for 'bodily injury' ... for which any 'insured' becomes legally responsible because of an auto accident, ....

> [t]he following exclusion is added:

> [Liberty Mutual] do[es] not provide Liability Coverage for any 'insured' for 'bodily injury' to you [3] to the extent that the limits of liability for this coverage exceed the applicable minimum limits for liability specified by Utah Code Ann. Section 31A–22–304. The applicable minimum limits are:

> ....

> 2. $25,000 for each person/$50,000 for each accident, if the limit of liability for this coverage is indicated as a split limit.

The trial court and the parties refer to this added exclusion as the "household exclusion" or "step-down provision" (the Step–Down Provision).[4]

¶ 6 On September 9, 2003, the Shoreses were involved in an automobile accident in a vehicle insured by Liberty Mutual. Mr. Shores was driving the vehicle at the time of the accident, and Mrs. Shores contends Mr. Shores was primarily at fault in causing the accident. As a result of the accident, Mrs. Shores, who was a passenger in the vehicle, suffered injuries and is allegedly severely and permanently disabled.

¶ 7 Following the accident, Mrs. Shores sued Mr. Shores for negligent driving, seeking to recover $100,000 under the Policy's bodily injury liability coverage. Liberty Mutual refuses to pay that amount and claims the Step–Down Provision limits Mrs. Shores's possible recovery amount to the statutory minimum of $25,000. Mrs. Shores claims she has incurred medical and medical-related expenses in excess of $25,000.

¶ 8 On February 9, 2004, Liberty Mutual filed a complaint against the Shoreses, asking the trial court to declare that Liberty Mutual is not required under the Step–Down Provision to pay Mrs. Shores any amount beyond the statutory minimum of $25,000. Several days later, the trial court granted Liberty Mutual's ex parte request to deposit $25,000 into a court trust fund pending the outcome of the litigation. Liberty Mutual later filed an amended complaint for declaratory relief.

¶ 9 On March 25, 2004, Mrs. Shores filed an answer to Liberty Mutual's amended complaint. Mrs. Shores's answer included a counterclaim against Liberty Mutual alleging a bad faith refusal to settle, on grounds that Liberty Mutual refuses to pay the statutory minimum amount of $25,000 "unless and until [Mrs. Shores] foregoes all claims against Liberty Mutual and signs a full-release of all claims occurring because of the accident." Mrs. Shores also sought judgment declaring that the Step–Down Provision is invalid because it violates Utah law and public policy, and that Liberty Mutual is liable for all damages incurred by Mrs. Shores as a result of Mr. Shores's alleged liability. Liberty Mutual moved to dismiss Mrs. Shores's bad faith counterclaim. Mr. Shores filed both an answer to Liberty Mutual's amended complaint and a counterclaim against Liberty Mutual, seeking declaratory judgment similar to that requested by Mrs. Shores.

¶ 10 Following a hearing, the trial court granted Liberty Mutual's motion to dismiss Mrs. Shores's bad faith counterclaim. Subsequently, Liberty Mutual moved for summary judgment and asked the court to dismiss the Shoreses' claims for declaratory relief.

¶ 11 The trial court heard oral argument on Liberty Mutual's motion for summary judgment on December 10, 2004. That same day, Mrs. Shores orally moved for a Utah Rule of Civil Procedure 56(f) continuance to conduct further discovery before the trial court ruled on Liberty Mutual's motion for

---

3. Under the Policy, " 'you' ... refers to: 1. The 'named insured' shown in the Declarations; and 2. The spouse if a resident of the same household."

4. A step-down provision is one in which "the coverage 'steps down' from the actual policy limits to the minimum required by the statute." 1 Rowland H. Long, *The Law of Liability Insurance* § 2.05[5] (2003).

summary judgment. The trial court denied Mrs. Shores's motion for continuance and subsequently granted Liberty Mutual's motion for summary judgment.

¶ 12 The Shoreses collectively appeal the trial court's grant of Liberty Mutual's motion for summary judgment on the Shoreses' claims for declaratory relief. *See* Utah R. Civ. P. 56(c). Additionally, Mrs. Shores individually appeals the trial court's grant of Liberty Mutual's motion to dismiss Mrs. Shores's bad faith counterclaim. *See* Utah R. Civ. P. 12(b)(6).

## ISSUES AND STANDARDS OF REVIEW

¶ 13 The Shoreses collectively appeal the trial court's grant of Liberty Mutual's motion for summary judgment on the Shoreses' claims for declaratory relief. *See* Utah R. Civ. P. 56(c). "We review the district court's decision to grant summary judgment 'for correctness, granting no deference to the [district] court.'" *Swan Creek Vill. Homeowners Ass'n v. Warne*, 2006 UT 22, ¶ 16, 134 P.3d 1122 (alteration in original) (quoting *Pugh v. Draper City*, 2005 UT 12, ¶ 7, 114 P.3d 546). A trial court's decision to grant summary judgment is only appropriate "'when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Norman v. Arnold*, 2002 UT 81, ¶ 15, 57 P.3d 997); *see also Salt Lake County v. Western Dairymen Coop.*, 2002 UT 39, ¶ 17, 48 P.3d 910.

¶ 14 Mrs. Shores also individually appeals the trial court's grant of Liberty Mutual's motion to dismiss her bad faith counterclaim. *See* Utah R. Civ. P. 12(b)(6). "Because the propriety of a motion to dismiss is a question of law, we review [the trial court's grant of a motion to dismiss] for correctness, giving no deference to the decision of the trial court." *Krouse v. Bower*, 2001 UT 28, ¶ 2, 20 P.3d 895. We will only affirm a trial court's grant of a motion to dismiss "'where it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of its claims.'" *Heiner v. S.J. Groves & Sons Co.*, 790 P.2d 107, 109–10 (Utah Ct.App.1990) (quoting *Arrow Indus. v. Zions First Nat'l Bank*, 767 P.2d 935, 936 (Utah 1988)).

## ANALYSIS

### I. Step–Down Provision

¶ 15 The Shoreses argue the trial court erred in granting Liberty Mutual's motion for summary judgment on the Shoreses' declaratory relief claims. In their counterclaims, the Shoreses asked the trial court to declare the Step–Down Provision invalid because the provision is ambiguous and violates Utah law and public policy. Liberty Mutual moved for summary judgment on the Shoreses' declaratory relief claims, and the trial court dismissed the claims, concluding that the Step–Down Provision is not ambiguous and is supported by Utah law and public policy. Because we reverse the trial court's grant of summary judgment on statutory grounds, it is unnecessary for us to consider whether the Step–Down Provision is void for reasons of ambiguity or public policy.

¶ 16 The Policy, under which both Mr. and Mrs. Shores are named insureds, provides that Liberty Mutual "will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident." Under the Step–Down Provision, however, the company will "not provide Liability Coverage for *any* 'insured' for 'bodily injury' ... to the extent that the limits of liability for this coverage exceed the applicable minimum limits for liability...." (Emphasis added.)

¶ 17 Under Utah Code section 31A–22–303(1)(a)(iv)(B), the Step–Down Provision is expressly prohibited. *See* Utah Code Ann. § 31A–22–303(1)(a)(iv)(B) (2005). Section 31A–22–303(1)(a)(iv)(B), which neither the trial court nor the parties mention, states that

> where a claim is brought by the named insured or a person described in [s]ubsection (1)(a)(iii), the available coverage of the policy may not be reduced or stepped-down because ... the named insured or any of the persons described in this [s]ubsection (1)(a)(iii) driving a covered motor vehicle is at fault in causing an accident.

*Id.* Those persons described under subsection (1)(a)(iii) are persons "related to the

named insured by blood, marriage, adoption, or guardianship who are residents of the named insured's household...." *Id.* § 31A–22–303(1)(a)(iii).[5]

¶ 18 Thus, section 31A–22–303(1)(a)(iv)(B) bars the Step–Down Provision in that the provision reduces the Policy's bodily injury coverage to the statutory minimum amount because Mr. Shores, a named insured, allegedly caused the accident resulting in injuries to Mrs. Shores, also a named insured. *See id.* § 31A–22–303(1)(a)(iv)(B).

¶ 19 Subsection 31A–22–303(1)(a)(iv)(B)'s legislative history supports our plain language reading of the statute and indicates that the Utah Legislature specifically adopted the subsection to proscribe auto insurance policy clauses such as the Step–Down Provision.

¶ 20 In 1999, the Utah Legislature amended Utah Code section 31A–22–303(1)(a)(iii) to include a provision prohibiting insurance carriers from reducing coverage of relatives who reside in the same household as the named insured when the named insured or a relative residing in the named insured's home was at fault in causing the automobile accident. *See* Motor Vehicle Liability Coverage, ch. 192, § 1, 1999 Utah Laws 723. The 1999 amendment did not specifically state that coverage cannot be stepped down, but rather provided that coverage "may not be reduced." *Id.*

¶ 21 The legislature's 2005 amendment, however, made it clear that the legislature considered reduction of coverage to be synonymous with stepping down of coverage. In the 2005 amendment, the legislature made two significant alterations. First, the legislature made the latter part of subsection 31A–22–303(1)(a)(iii), barring reduced coverage, a separate subsection. *See* Motor Vehicle Liability Coverage, ch. 295, § 1, 2005 Utah Laws 1867; *see also* Utah Code Ann. § 31A–22–303 amendment notes (2005). Second, and more importantly, the newly added subsection 31A–22–303(1)(a)(iv) specifically prohibited the stepping down of coverage. *See* Motor Vehicle Liability Coverage, ch. 295, § 1, 2005 Utah Laws 1867; *see also* Utah Code Ann. § 31A–22–303 amendment notes (2005). In the Utah House and Senate debates on the 2005 amendment, the legislature stated that the amendment was "simply a clarification of existing law." Senate Floor Debate on S.B. 207, Motor Vehicle Coverage Insurance Amendments, 2005 Leg., Gen. Sess. (statement of Sen. Dan R. Eastman); *see also* House Floor Debate on S.B. 207, Motor Vehicle Coverage Insurance Amendments, 2005 Leg., Gen. Sess. (statement of Rep. Curtis Oda). That is, the legislature directed that its earlier legislation was intended to prevent step-down provisions from being enforced, and because many insurance companies had misconstrued the meaning of that earlier legislation, it was necessary for the legislature to eliminate any alleged ambiguity in the statutory language. *See* Senate Floor Debate on S.B. 207, Motor Vehicle Coverage Insurance Amendments, 2005 Leg., Gen. Sess. (statement of Senator Dan R. Eastman). Senator Dan R. Eastman, who introduced the amendment, explained,

> Many insurance companies would reduce the amount of liability coverage available if one family member caused an auto accident which resulted in injury to another family member. This step-down clause resulted in companies providing minimal lia-

---

5. In its entirety, Utah Code section 31A–22–303(1)(a)(iii) states that motor vehicle liability coverage shall,

> except as provided in [s]ubsection 7, insure persons related to the named insured by blood, marriage, adoption, or guardianship who are residents of the named insured's household, including those who usually make their home in the same household but temporarily live elsewhere, to the same extent as the named insured.

Utah Code Ann. § 31A–22–303(1)(a)(iii) (2005).
Subsection 7 provides:

> [a] policy of motor vehicle liability coverage under [s]ubsection 31A–22–302(1) may specifically exclude from coverage a person who is a resident of the named insured's household, in-

cluding a person who usually makes his home in the same household but temporarily lives elsewhere if:

> (a) at the time of the proposed exclusion, each person excluded from coverage satisfies the owner's or operator's security requirement of [s]ection 41–12a–301, independently of the named insured's proof of owner's or operator's security;
>
> (b) the named insured and the person excluded from coverage each provide written consent to the exclusion; and
>
> (c) the insurer includes the name of each person excluded from coverage in the evidence of insurance provided to an additional insured or loss payee.

*Id.* § 31A–22–303(7).

bility insurance to a family member even though the premiums were paid for a much higher level of coverage.... [This amendment will ensure that liability coverage] will be provided when one member of a household causes an auto accident that injures another member of the household.

*Id.* In reading the 2005 amendment in light of the previous legislation, it is evident that the legislature, in specifically including the words "stepping down" in the 2005 amendment and in making the step-down prohibition a subsection unto itself, wanted to make it absolutely clear to auto insurance companies that policy provisions reducing coverage to named insureds and their family members when one of these individuals causes an accident injuring another named insured or family member are unlawful.

¶ 22 Accordingly, we conclude that the Liberty Mutual Step–Down Provision violates Utah Code section 31A–22–303(1)(a)(iv)(B) and is therefore invalid. We thus vacate the trial court's grant of summary judgment to Liberty Mutual and remand for further proceedings consistent with this opinion.[6]

## II. Bad Faith Counterclaim

■ ¶ 23 Mrs. Shores contends the trial court erred in granting Liberty Mutual's motion to dismiss her bad faith counterclaim. Specifically, Mrs. Shores's counterclaim alleges that Liberty Mutual acted in bad faith in refusing to settle her claim because the company would not agree to pay Mrs. Shores the statutory minimum amount of $25,000 unless she agreed to fully release Liberty Mutual from all claims. The trial court dismissed Mrs. Shores's bad faith counterclaim, concluding that Liberty Mutual did not owe Mrs. Shores a duty of good faith because Mrs. Shores is a third-party claimant not in privity of contract with Liberty Mutual. We agree.

¶ 24 In *Sperry v. Sperry*, 1999 UT 101, 990 P.2d 381, the Utah Supreme Court determined under what circumstances a named insured who brings a liability claim against a coinsured is a first or third-party claimant. *See id.* at ¶ 8. Similar to the present case, in *Sperry*, a husband and wife were both named insureds under an auto insurance policy. *See id.* at ¶ 3. After the husband negligently caused an accident that killed the couple's son, the wife sued her husband for wrongful death and sued the couple's insurance company for misrepresentation and bad faith refusal to settle. *See id.* at ¶ 5. The trial court dismissed the wife's claims, concluding that the wife could not assert claims of bad faith and misrepresentation against the insurance company because, although she was a named insured, the wife, in this context, was a third-party claimant. *See id.* at ¶ 1.

¶ 25 The supreme court affirmed the trial court's decision. *See id.* at ¶ 12. In so doing, the court rejected the wife's claim "that because she [was] a named insured under the policy, she [was] a first party and [was] owed a duty of good faith in all her dealings with [the insurance company], even when she [was] suing a co-insured covered by the liability provisions of the policy." *Id.* at ¶ 9. The court explained that "Utah law clearly limits the duty of good faith to first parties to insurance contracts. Consequently, only a first party can sue for breach of that duty." *Id.* at ¶ 7. In Utah,

[w]e use the term "first party" to refer to an insurance agreement where the insurer agrees to pay claims submitted to it by the insured for losses suffered by the insured.... In contrast, a "third party" situation is one where the insurer contracts to defend the insured against claims made by third parties against the insured and to pay any resulting liability, up to the specified dollar limit.

*Id.* at ¶ 8 (quotations and citations omitted). Thus, the court concluded that because the wife's "claim [was] based upon her husband's

---

**6.** Because the 2005 amendment simply clarifies existing law, it does not " 'enlarge, eliminate, or destroy' substantive rights [and therefore] can be applied retroactively." *Goebel v. Salt Lake City S. R.R. Co.*, 2004 UT 80, ¶ 39, 104 P.3d 1185 (citation omitted). Regardless, it is clear that prior to the 2005 amendment, Utah Code section 31A–22–303 prohibited "reduced" coverage for family members and therefore barred the Step–Down Provision. Utah Code Ann. § 31A–22–303(1)(a)(iii) (Supp.2004) (amended 2005).

alleged negligence and not upon her own coverage under the policy," the insurance company's duty of good faith ran to the husband "to defend [him] against the wrongful death claim and pay any resulting liability." *Id.* at ¶ 11. The court further noted that

> [a] finding that [the insurance company] also owed [the wife] a duty of good faith and fair dealing ... would mean that [the insurance company] owed inconsistent duties simultaneously to both [the wife] and [the husband], creating an almost certain conflict of interest. This would make any such insurer an almost certain target for a claim of breach of one of these duties, in addition to the claim for the underlying negligence.

*Id.*

¶ 26 Here, Mrs. Shores, like the wife in *Sperry*, is a third-party claimant because in this context her claims against Liberty Mutual arise out of Mr. Shores's alleged negligence rather than out of Mrs. Shores's own coverage under the Policy. *See id.* at ¶ 10. That is, under these circumstances, Mrs. Shores asserts her claims in her capacity as an injured party seeking to recover against an insured, rather than as an insured herself. Thus, we affirm the trial court's decision to dismiss Mrs. Shores's bad faith counterclaim against Liberty Mutual.

### CONCLUSION

¶ 27 We affirm the trial court's grant of Liberty Mutual's motion to dismiss Mrs. Shores's bad faith counterclaim and vacate the trial court's grant of Liberty Mutual's motion for summary judgment. We remand for proceedings consistent with this opinion.[7]

¶ 28 I CONCUR: RUSSELL W. BENCH, Presiding Judge.

---

7. The Shoreses both request attorney fees on appeal. We, however, decline this request because the trial court did not award attorney fees to either party below. *See Wilde v. Wilde*, 2001 UT App 318,¶ 46, 35 P.3d 341 ("[W]hen the trial court does not award fees to either party below, then 'regardless of which party prevails on appeal,' absent a showing of changed circumstances following the trial court's decision warranting such award on appeal, 'both parties must bear their own fees on appeal.' " (quoting *Larson v. Larson*, 888 P.2d 719, 727 (Utah Ct.App. 1994))).